George RAMAGE, Plaintiff,

v.

FORBES INTERNATIONAL
INCORPORATED, et
al., Defendants.

No. SA CV 96–789 AHS (EEx).

United States District Court,
C.D. California,
Southern Division.

July 31, 1997.

ORDER GRANTING DEFENDANT FORBES INTERNATIONAL INCOR- PORATED'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT; GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF IN FAVOR OF DEFENDANT FORBES INTERNA- TIONAL INCORPORATED; ISSU- ING ORDER TO SHOW CAUSE .

STOTLER, District Judge.

## I.

### PROCEDURAL HISTORY

On February 13, 1997, defendant Forbes International Incorporated, dba Grand Euro- pean Tours ("GET"), filed a Motion to Dis- miss or for Summary Judgment. On March 18, 1997, plaintiff filed opposition. On April 21, 1997, defendant GET filed reply. The Court issued a notice of taking the matter under submission on April 17, 1997.

## II.

### FACTUAL SUMMARY

Plaintiff George Ramage is a California citizen who claims he suffered severe head injuries on August 20, 1995, when the motor- coach in which he was traveling struck a bump in the road near Glasgow, Scotland, causing him to rise out of his seat and hit his head on the roof of the coach.

The motorcoach in which Ramage was in- jured was provided as ground transportation as part of a European vacation tour he pur- chased from Grand European Tours (GET), an Oregon-based tour operator. Ramage booked a 27–day tour package to England, Scotland, Wales and the Republic of Ireland (called "Britain & Ireland Supreme") with GET. He booked the tour on January 3, 1995. The tour dates were August 2 to 28, 1995.

The package plaintiff Ramage bought from GET included round-trip air transportation between Los Angeles and London, airport transfers, 25 nights' accommodations along the ground tour route, breakfasts and some dinners, the services of a local tour director, the services of local guides, admission fees at various sights and ground motorcoach trans- portation. All of the services were provided by independent contractors. GET's role was to assemble the services and sell them to private parties.

GET contracted with Grand European In- bound (GEI), a British corporation, to pro- vide the entire ground package, including motorcoach transportation. In turn, GEI contracted with Stainton's Coaches to pro- vide the motorcoach transportation facet of the ground package for the tour. Stainton's Coaches is the owner and operator of the bus on which plaintiff Ramage was injured.

When plaintiff Ramage purchased the tour in January, 1995, he signed his name on a booking form which, among other things, acknowledged that he had read and understood the terms and conditions on a disclaimer form entitled "Responsibility," which was on the back of the booking form. Scrugham Affidavit, Exhibit A. The "Responsibility" disclaimer expressly excludes GET from responsibility for breach of contract or negligence on the part of the independent contractors which result in any loss, damage, delay, or injury to the traveler. *Id.* Specifically, the form says all passenger contracts between the airlines or transportation companies and the passenger are exclusively between the company and the passenger and GET assumes no responsibility in the connection.

On August 20, 1995, Ramage was in Scotland on the tour. The Stainton's Coaches motorcoach in which Ramage was travelling crossed a bump in the road. With no seatbelt in his seat, Ramage was thrown upward, and hit his head on the ceiling of the coach. He immediately reported his injury to the tour director who referred him to a doctor. Upon the doctor's findings, Ramage rejoined his tour group the same day his injury occurred.

Plaintiff Ramage asserts two causes against GET in his complaint. First, Ramage claims he relied on GET's express and implied warranties of safe transportation and freedom of defects in Stainton's motorcoaches. Second, Ramage claims GET is liable for the negligence of its independent contractors, GEI and Stainton's Coaches, because GET had a duty to Ramage created by GET's contract with GEI and Stainton's Coaches. For breach of warranty and negligence, plaintiff seeks damages in excess of $100,000 against GET.

Defendant GET has filed a motion to dismiss or for summary judgment for both of the causes plaintiff Ramage has claimed. In ruling on the motion, the Court grants summary judgment in GET's favor, finding that defendant is not liable for either breach of warranty or negligent selection.

## III.

### *PARTIES' CONTENTIONS*

A. *Defendant GET's Moving Papers*

Defendant GET argues that plaintiff Ramage is not entitled to bring claims against GET for breach of warranty and negligence because Ramage signed a disclaimer stating that GET would not be liable for the breach or negligence of independent suppliers of services to the tour Ramage purchased from GET, including providers of transportation services. GET argues because the law is clear that such disclaimers are fully enforceable and that tour operators are not liable for the alleged negligence of independent suppliers of services to tours, GET should be dismissed from the action brought by Ramage.

First, GET contends that the terms and conditions of the contract governing the tour, specifically the disclaimer therein, bar Ramage's claim against defendant. Generally, contractual disclaimers and limitations of liability are binding even though they appear on pre-printed tickets and brochures. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991) (holding that a standard form forum-selection clause which appeared on plaintiff's passenger ticket was valid as a disclaimer). More specifically, tour operators' contractual disclaimers for the negligence of suppliers are binding. *Corby v. Kloster Cruise Ltd.*, No. C–89–4548 MHP (ARB), 1990 WL 488464 (N.D.Cal. Oct. 5, 1990) (holding that a standard form disclaimer for negligence of third-party tour operators which appeared on plaintiff's cruise ticket was valid as a disclaimer).

Second, GET argues even absent the disclaimer, GET is not liable for the alleged negligence of an independent contractor. More specifically, GET argues that tour operators are not liable for the negligence of providers of transportation services. *Corby*, 1990 WL 488464 at 3. GET also cites numerous out-of-state cases which hold that tour operators are not liable for the negligence of third party suppliers of services, and specifically the suppliers of transportation services. GET also argues that tour operators are also not liable for the negligence of other suppli-

ers of services. GET cites several out-of-state cases which affirm that tour operators are not liable for the negligence of hotels.

Third, GET argues that it did not guarantee a trip free from harm caused by third parties, and that GET had no duty to do so. Ramage's claim that GET breached a warranty regarding the quality of coaches fails because Ramage does not and cannot point to any explicit warranty. Moreover, GET argues the tour brochure contains no warranty whatsoever. The general language which appears in the GET travel brochure which mentions "executive motorcoaches" and "experienced European coach drivers" does not constitute a warranty that no harm will befall tour participants. *Lavine v. General Mills, Inc.,* 519 F.Supp. 332 (N.D.Ga.1981) (holding that a general promise that a trip will be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff). Additionally, the language Ramage quotes as evidence of a warranty did not appear in the brochure for Ramage's 1995 tour; it appeared only in the 1996 brochure. GET contends that as a matter of law the "Responsibility" disclaimer explicitly states that it was not guaranteeing the safety of tour participants while they were in the hands of third-party tour operators.

Fourth, GET argues that as a matter of law it was not negligent in selecting a ground operator for the tour. The scope of the duty of tour operators in selecting independent operators is broad and only compels a general inquiry by the tour operator into the safety of the independent operator. *Wilson v. American Trans Air, Inc.,* 874 F.2d 386 (7th Cir.1989) (holding that a tour operator had "no duty to make specific inquiries into guest safety or security at the hotel" where it already completed a general inspection and relied on the hotel's good reputation). In the instant case, GET had no reason to doubt Grand European Inbound's safety because GET made an inquiry into the reliability of GEI, and used it without incident for more that 10 years before Ramage's alleged accident.

### B. *Plaintiff's Opposition*

First, Ramage claims that waiver of defendant GET's liability is contrary to public policy, and thus unenforceable and void. *See* Cal.Civ.Code § 1790.1. Ramage contends that he was not put on sufficient notice that the disclaimer was significant because the print of the disclaimer is not of sufficient type size. Moreover, Ramage did not construe his signature on the booking form as acceptance of waiver of GET from liability to warrant injury-free ground travel.

Ramage also claims that GET impliedly warranted injury-free ground travel. Implied warranty for consumer goods may not be waived except when the seller, by instrument of conspicuous writing to the buyer, communicates that the product is "as is" or "with all faults." Cal.Civ.Code § 1792.4.

Second, Ramage argues that the standard for summary judgment is whether there is a triable issue as to any material fact. Cal.Civ. Pro.Code § 437(c); *Molko v. Holy Spirit Association,* 46 Cal.3d 1092, 1107, 252 Cal.Rptr. 122, 762 P.2d 46 (1988) (holding that the function of the trial court on a motion for summary judgment is to determine whether issues of fact exist, and not to decide the merits of the issues themselves); *Versa Technologies, Inc. v. Superior Court,* 78 Cal. App.3d 237, 240, 142 Cal.Rptr. 570 (1967) (holding that if there is any issue of fact which remains upon a motion for summary judgment, the motion must be denied).

Ramage contends GET expressly and impliedly provided its warranty of merchantability and fitness for injury-free transportation. Ramage claims GET lulled him into believing that his transportation was the best there was, however, he was at the mercy of GET because GET provided a bus without seatbelts.

Fourth, Ramage argues that the essential elements of actionable negligence are present. GET had the legal duty to insure that the ground transportation for which GET contracted had relevant safety equipment to protect Ramage from possible and foreseeable injuries. GET breached these duties by not inquiring and determining that all motorcoach seats had seatbelts, and the lack of a seatbelt was the proximate and legal cause of Ramage's injuries.

Fifth, Ramage argues GET owed him a duty created by the contract warranty, and breach of the duty by GET created a cause of action based on negligence. *Eads v. Marks,* 39 Cal.2d 807, 810–11, 249 P.2d 257 (1952). GET had total control of the arranging of motorcoaches, and had a duty to insure that the motorcoach in question had seatbelts. Ramage notes it is a violation of California law to ride on highways without seatbelts, and that therefore GET should be held liable for his injuries given it was responsible to provide a motorcoach with seatbelts.

### C. *Defendant GET's Reply*

GET contends Ramage fails to rebut GET's showing that no question of material fact exists regarding GET's liability for breach of warranty, negligence and negligent selection.

First, GET contends that Ramage's argument that the disclaimer is not printed in sufficient size is frivolous as is Ramage's contention that he did not know the significance of what he was signing. Scrugham Affidavit, Exhibit B. The only requirement is that the disclaimer be "reasonably communicated." *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione,* 858 F.2d 905, 910 (3rd Cir. 1988) (holding that contractual conditions printed on cruise ticket were valid, even though they were in small type). Moreover, Ramage's claim that he did not read the "Responsibility" disclaimer is immaterial. He had the chance to read it, and he signed it. *Marek v. Marpan Two, Inc.,* 817 F.2d 242, 245 (3rd Cir.), *cert. denied,* 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987) (holding that the passenger who omits to read the contract takes the risk of omission).

GET reasserts that the "Responsibility" clause is fully enforceable and precludes Ramage's claims. *Carnival Cruise Lines,* 499 U.S. at 593, 111 S.Ct. at 1527.

Second, Ramage's failure to produce or quote verbatim a clause or text which displays the express or implied warranty he claims is fatal to his warranty claim. Ramage also fails to refute GET's argument that the apparent basis of Ramage's warranty claim is invalid because Ramage could not have relied—as he claims—upon a brochure that was not printed until after Ramage returned from the tour in question. GET did not warrant, nor did it have any duty to warrant, the safety of tour participants or of independent suppliers of services to its tours. *Stafford v. Intrav. Inc.,* 841 F.Supp. 284, 288 (E.D.Mo.1993), *aff'd* 16 F.3d 1228 (8th Cir.1994).

Third, GET argues it was absurd for Ramage to argue that GET is liable for negligence arising out of a contract by reference to a California seatbelt statute that Ramage does not even cite. The alleged accident occurred in Scotland, not California.

Fourth, GET points out that GET did not directly contract with Stainton's Coaches to provide ground transportation for the tour. GEI was responsible for the entire ground tour, and contracted with Stainton's Coaches to provide transportation.

Fifth, GET argues that Ramage was required to show that there are genuine issues of material fact to overcome GET's motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Ramage relies on assertion and speculation, and thus fails to show any genuine issue of material fact.

## IV.

### *DISCUSSION*

Defendant GET has filed a motion to dismiss for failure to state a claim (Rule 12(b)(6) Motion), or in the alternative a motion for summary judgment.

For a defendant to succeed on a Rule 12(b)(6) motion, defendant must demonstrate that no legal remedy exists for plaintiff's claims even if all of the plaintiff's claims are true. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, a Rule 12(b)(6) motion dismissal is proper only when plaintiff either fails to present a cognizable legal theory or fails to present sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990).

If a Rule 12(b)(6) motion presents matters outside the pleadings, the motion shall be treated as one for summary judgment and

disposed of under Rule 56. *See* Fed.R.Civ.P. 12(b). In that event, the defendant must demonstrate there is no genuine issue of material fact by pointing out the absence of evidence produced by the plaintiff to support plaintiff's case. *Celotex Corp.*, 477 ·U.S. at 322, 106 S.Ct. at 2552.

In the instant case, defendant's motion presents matters outside the pleadings: an affidavit of Thomas F. Scrugham, Vice President of GET which, among other things, represents that GET is not the employer of either GEI or Stainton's Coaches; a photocopy of the Booking Form signed by plaintiff Ramage; and a photocopy of a 1995 GET travel brochure. Scrugham Affidavit. Plaintiff in his opposition acknowledged the dual nature of the motion, but chose not to offer opposing evidence. Thus, the Court can fairly consider GET's motion as one for summary judgment under Rule 56(c).

A. *Defendant's Motion as to the Breach of Warranty Claim*

GET argues that it could have no liability for breach of warranty because it did not make any warranties to the plaintiff as to the safety of his travel and because in booking the trip, plaintiff explicitly disclaimed any liability on the part of GET. In considering defendant's motion for summary judgment, the Court first turns to the issue of the disclaimer and then considers the breach of warranty claim itself.

1. *Validity of "Responsibility" Disclaimer*

 In general, contractual clauses located on commercial passage tickets are valid, even where such clauses are not the result of bargaining between the parties. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991). In *Carnival Cruise Lines*, the plaintiff purchased passage for a cruise. *Id.* at 587, 111 S.Ct. at 1524. On the back of the passage tickets was pre-printed text which, among other things, disclaimed that any claims against the cruise line brought by the passenger must be brought only in a Florida court. *Id.* The Court held that the text was a valid form contract identical to every commercial passage contract issued by other cruise lines. *Id.* at 593, 111 S.Ct. at 1527.

The contractual clause at issue appeared on a booking form agreement between plaintiff Ramage and defendant GET, signed by Ramage on January 3, 1995. Scrugham Affidavit, Exhibit A. The clause released GET from liability for the tour's independent contractors, in part stating, "GRAND EUROPEAN TOURS shall not be responsible for breach of contract or any intentional or careless actions or omissions on the part of such suppliers...." Scrugham Affidavit, Exhibit A. Passengers are required to ·take notice of the disclaimer because they must sign and date the bottom of the booking form to affirm the trip's arrangement. Just above the signature line is a clause which says:

> I acknowledge that I have read and understood the terms and conditions as outlined in the Tour Brochure and the back of this form [the "Responsibility" disclaimer] and accept on behalf of myself and my party.

Scrugham Affidavit, Exhibit A.

The primary distinction between the "Responsibility" disclaimer and the *Carnival Cruise Lines* clause is that the "Responsibility" disclaimer appears on a booking form, and not on an actual ticket. The passenger has the chance to deny the terms of the "Responsibility" disclaimer before payment for the trip and can refuse to sign the booking form and withhold or reject payment. The passenger in *Carnival Cruise Lines* could not see the disclaimer until after the ticket was purchased. *Carnival Cruise Lines,* 499 U.S. at 587, 111 S.Ct. at 1524. Nevertheless, in *Carnival Cruise Lines*, the Court held this disclaimer valid. *Id.* at 593, 111 S.Ct. at 1527. The contract clause in the instant case is of the same nature—a passage disclaimer—yet it meets a higher standard of notice than the disclaimer in *Carnival Cruise Lines*. Accordingly, inasmuch as it is such a disclaimer, it is valid. Moreover, the disclaimer in GET's contract with Ramage does not affect a public interest, and is thus otherwise valid.

2. *Breach of Warranty*

Plaintiff Ramage contends defendant GET expressly and impliedly breached its warran-

ty of merchantability to provide injury-free travel. GET responds that its 1995 brochure contained no such warranties. GET contends that the language to which plaintiff cites as creating a warranty comes from GET's 1996 brochure, printed after plaintiff's return from his vacation. The question is whether a warranty was made to guarantee injury-free travel; and, if so, whether the disclaimer validly disclaims any liability for such warranty.

■ A warranty is either an express or implied contractual term which deals with "some aspect of the sale, such as title to the goods, or their quality or quantity." 3 B.E. Witkin, *Summary of California Law* § 50 (9th ed.1987).

■ An express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Hauter v. Zogarts,* 14 Cal.3d 104, 115 n. 9, 120 Cal.Rptr. 681, 534 P.2d 377 (1975) (holding, inter alia, defendant breached implied warranty of merchantability where an express warranty regarding safety of goods was printed on package and where goods failed to conform to the express warranty).

■ A warranty of merchantability is implied in every sale, unless excluded or modified. *Dorman v. International Harvester,* 46 Cal.App.3d 11, 17, 120 Cal.Rptr. 516 (1975) (holding a provision in a contract for sale of a tractor disclaiming implied warranties of merchantability and fitness was not sufficiently conspicuous). A disclaimer of implied warranty of merchantability is valid if the buyer had actual or constructive notice of the disclaimer before the bargain was completed. *Miller v. Germain Seed & Plant Co.,* 193 Cal. 62, 69, 222 P. 817 (1924) (holding custom of disclaimer in seed industry was enough to conclude buyer was aware of disclaimer).

■ In the present case, Ramage argues GET expressly and impliedly warranted that the tour motorcoaches were "the best in touring motorcoaches with emphasis on leisure and comfort, usually mercedes (sic) or volvos (sic)." Ramage argues that such statement was a warranty that the motor-

coaches would not break down and that they would be safe inasmuch as they would have seatbelts. Complaint ¶¶ 4–6. However, Ramage could not have relied upon such statements because they are from GET's 1996 brochure which were not even printed until after Ramage returned from his August, 1995, tour.

Nevertheless, GET's statements made in its 1995 tour brochure regarding motorcoaches (which Ramage could have claimed he relied upon) hardly add up to express warranties which affirm their steadfast reliability and presence of seatbelts. One statement says, "The professional Tour Directors and experienced European coach drivers take the worry out of foreign travel as they manage the intricate details . . . .". Scrugham Affidavit, Exhibit B at 2. The only other statement says, "The fleet of executive motorcoaches provide the latest in touring luxury with large panoramic windows and cloth upholstered, reclining seats. Individual air vents and high-fidelity sound system insure complete comfort while the custom of daily seat rotation gives everyone a variety of views." Scrugham Affidavit, Exhibit B at 3. Nowhere on the tour brochures is there any express warranty of the motorcoach's operational reliability or its inclusion of seatbelts. There is simply no statement regarding safety.

■ Furthermore, even were there an implied warranty of merchantability, the issue is of little consequence in this matter. The validity and conspicuousness of the "Responsibility" disclaimer renders void all implied warranties regarding the reliability and safety of motorcoaches. The disclaimer provides:

"As agent, GRAND EUROPEAN TOURS shall not be responsible for breach of contract or any intentional or careless actions or omissions on the part of such suppliers which result in any loss, damage, delay or injury to you or your travel companions or group members. In addition, GRAND EUROPEAN TOURS shall not be responsible for any injuries, damages, or losses caused to any traveler in connection with terrorist activities, social or labor unrest, mechanical or construction failures or diffi-

culties, diseases, local laws, climatic conditions, abnormal conditions or developments, or any other actions, omissions, or conditions outside GRAND EUROPEAN TOURS' control."

Scrugham Affidavit, Exhibit A. The disclaimer (titled "RESPONSIBILITY") is set apart from any other language by its placement on the back of the booking form. The passenger is directed to read the disclaimer before signing the booking form by the language just above the signature line which states that the passenger's signature is acknowledgement of assent to the terms and conditions on the back of the booking form. Plaintiff Ramage acknowledged that he at least had constructive knowledge of this disclaimer per his signature on the front of the booking form. Scrugham Affidavit, Exhibit A. Thus, GET's disclaimer of implied warranty of merchantability is valid. *See Germain Seed & Plant Co.*, 193 Cal. at 69, 222 P. 817.

Accordingly, the Court grants defendant GET's motion on Ramage's first claim for relief, granting summary judgment in GET's favor as to plaintiff's claim for express and implied breach of warranty.

## B. *Defendant's Motion as to the Negligent Selection Claim*

Plaintiff Ramage contends that defendant GET negligently contracted with GEI and Stainton's Coaches to provide transportation for GET's tour clients. GET argues that GEI and Stainton's Coaches were independent contractors, and that GET is not liable for their actions per the "Responsibility" disclaimer. There is little dispute whether or not GEI and Stainton's Coaches were independent contractors. Thus, the issue is whether GET owed a duty to Ramage to provide safe transportation.

The California Court of Appeal has explained that under California law, "[f]or a negligence cause of action, the plaintiff must allege a duty, a breach of that duty, an injury to the plaintiff as a proximate result of that breach." *Krawitz v. Rusch,* 209 Cal.App.3d 957, 963, 257 Cal.Rptr. 610 (1989) (holding that a non-dealer seller of a car had no duty either to install seatbelts or to warn of their absence to purchaser). "A duty may be con-

tractual, statutory or common law." *Id.* "Whether a duty exists is a question of law for the court to determine." *Id.*

First, the Court considers whether plaintiff was owed a contractual duty of care by defendant. In his Complaint plaintiff Ramage avers GET negligently contracted with GEI and Stainton's Coaches. Compliant ¶ 10. Ramage argues that GET's contractual duty to him was violated because the motorcoach in which he was riding was in disrepair, had no seatbelts, and was driven by a negligent driver. He contends that absence of a seatbelt and the driver's negligence when traversing a bump combined to cause him severe head injuries. Ramage says GET violated its contractual duty "in direct conflict with its advertisements that it provided 'the best in tour motorcoaches.'" Complaint ¶ 10. In his opposition, Ramage asserts GET's duty was contractual, contending that GET "contracted with Plaintiff to provide ground transportation during a tour of Europe." Opposition ¶ 6.

Analysis whether this language suffices as a contractual duty to Ramage is unnecessary first because plaintiff fails to establish that this language appears in any tour brochure or contract relative to the tour Ramage took. By not identifying the source of such statements, it is impossible to determine when, if ever, the statements were made.

Furthermore, the "Responsibility" disclaimer which Ramage signed contains language directly contradicting the theory that GET created a contractual duty to the plaintiff, providing, "GRAND EUROPEAN TOURS ... acts solely in the capacity of an agent for Suppliers ... in arranging for travel-related services or in accepting reservations or bookings for services that are not directly supplied by GRAND EUROPEAN TOURS (such as air and surface transportation, hotel accommodations, meals, tours, cruises, etc.)" Scrugham Affidavit, Exhibit A. The disclaimer further says that GET is not responsible for "any intentional or careless actions or omissions on the part of such suppliers...." Scrugham Affidavit, Exhibit A. Stainton's Coaches, via an agreement with GEI, provided the ground transporta-

tion. Both GEI and Stainton's Coaches are suppliers under the terms of the above disclaimer. Scrugham Affidavit ¶ 5. Thus, to the extent Ramage asserts that GET had a contractual duty to assure safe travel by providing a motorcoach free of mechanical problems and equipped with seatbelts, the assertion is not supported by any contractual language and any contractual duty was waived by plaintiff's valid disclaimer.

Next as to any statutory duty, plaintiff Ramage fails to raise such issue in his Complaint, but says in his Opposition, "In fact, pursuant to California law, it is a violation of law to ride on the highways without the use of seatbelts." Opposition ¶ 6. Ramage cites no statute for this proposition. Nevertheless, under the relevant California statutes to which Ramage ostensibly makes reference, there is no duty created to tour operators to insure for their customers that independent contractors in California, let alone in another country, install seatbelts on motorcoaches. *See* Cal.Veh.Code §§ 27314–27315. More to the point, Ramage does not cite any English statute or regulation which establishes a duty for tour operators to insure that independent contractors install seatbelts on motorcoaches. Thus, Ramage fails to adduce any theory by which GET owed him a duty created by statute.

The final theory, duty created under common law, is not even mentioned by plaintiff. Even if a common law duty were alleged and a claim made that GET is primarily liable for negligent selection, defendant GET responds to Ramage's cloudy negligent selection claim under a common law tort theory of duty to investigate, citing *Wilson v. American Trans Air, Inc.*, 874 F.2d 386 (7th Cir.1989). In *Wilson,* the court held that the tour operator met its duty of reasonable care to investigate an independent contractor (a hotel in this case) when it made a general inquiry into the contractor's reputation and safety record. *Id.* at 390.

The theory of duty to use due care in selecting an independent contractor (under which *Wilson* was decided) is applied under California law in *Ross v. Trans National Travel,* No. 88–1763–Z, 1990 WL 79229 (D.Mass. June 5, 1990). The factual disposi-

tion in *Ross* is almost exactly on point with the present case. Ross purchased a safari vacation from the defendant tour operator. *Id.* at *1. The tour operator then contracted with an independent contractor for the provision of the safari's ground transportation. *Id.* Plaintiff was injured as a result of allegedly negligent operation of the ground vehicle by the independent contractor. *Id.* On plaintiff's claim against defendant tour operator for negligent selection of the independent contractor, the court held for defendant tour operator because plaintiff failed to adduce any information controverting defendant's affidavit that defendant conducted a general inquiry into the reputation of the independent contractor and that defendant did business with the independent contractor without any reason to question the contractor's competence. *Id.* at *2. Thus, under this ruling which applies California law, the standard of due care is met by a general inquiry into the contractor's competence. *See also* 6 B.E. Witkin, *Summary of California Law* § 955 (9th ed.1988).

In his Complaint, plaintiff Ramage does not allege any failure by GET to perform a general inquiry, any failure by GET to conduct a thorough inquiry, or any record of negligence or history of customer complaints against GEI or Stainton's Coaches. On the other hand, GET asserts that prior to conducting business with Banks–Sadler, GET investigated the company and learned of its "solid reputation as a groundhandler." Scrugham Affidavit ¶ 7. Moreover, GET has used GEI and Banks–Sadler (GEI's holding company) since 1984 as a local groundhandler for the European tours sold by GET. Scrugham Affidavit ¶ 7. GET asserts that prior to Ramage's complaint, GET had never received a complaint from one of its tour participants about the quality of the motorcoaches or the quality of motorcoach driving. Scrugham Affidavit ¶ 7. Furthermore, none of Ramage's fellow travelers complained. In his opposition, plaintiff Ramage adduces no facts to controvert GET's factual assertions. Ramage fails to identify any facts upon which it could be concluded GET negligently selected its carrier. Accordingly Ramage fails to give rise to any triable question of fact with

regard to GET's common law duty of care and alleged negligent selection.

Therefore, plaintiff Ramage fails to point to any duty upon which a negligent selection claim can rest, and the Court grants defendant GET's motion for summary judgment on plaintiff Ramage's claim for negligent selection.

## V.

### *ORDER TO SHOW CAUSE RE: LACK OF PROSECUTION*

As a further note, plaintiff has never filed proof of service on remaining defendants Grand European Inbound, Ltd. or Stuart Stainton, d.b.a. Stainton's Coaches, yet this action has been pending since August 19, 1996. Accordingly, plaintiff is ordered to show cause in writing no later than August 18, 1997, why this action should not be dismissed for lack of prosecution pursuant to Local Rule 12. An action may be dismissed if plaintiff has not diligently prosecuted the action. No response to this order is required if a responsive pleading or proof of service in compliance with the Federal Rules has been filed on or before the date upon which the response is due.

## VI.

### *CONCLUSION*

Pursuant to the foregoing, the Court grants defendant Forbes International Inc.'s motion for summary judgment. Plaintiff's claim for breach of warranty fails as a matter of law due to the valid disclaimer. The claim for negligence fails because plaintiff has not presented any facts upon which a duty to plaintiff could be based.

The Court has this date modified, signed, and filed defendant's Statement of Uncontroverted Facts and Conclusions of Law.

Finally, plaintiff must show good cause no later than August 18, 1997, why the action should not be dismissed for lack of prosecution as to the remaining defendants.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties.