Sergey and Irina **VICHES, Jerry and Barbara Reams, Thomas and Sonja Angelo, Gregory and Vera Schwartsburg, Arkady and Nelli Ginzburg, Igor and Daniel Ginzburg, as representative of a class of similarly situated people, Plaintiffs,**

v.

**MLT, INC., d/b/a MLT Vacations, Allegro Resorts Dominica, S.A., a foreign corporation, Allegro Resorts Inc., n/k/a Allegro Resorts Marketing Corporation, a Florida corporation, and Hotel Luperon Beach Resorts, S.A., a foreign corporation, Defendants.**

No.  CIV A 98–40395.

United States District Court, E.D. Michigan, Southern Division.

Sept. 26, 2000.

Gregory Zlatopolsky, Law Offices of Gregory Zlatopolsky, Farmington Hills, MI, Harvey Babcock, Harvey Babcock & Associates, Farmington Hills, MI, for plaintiffs.

Rodney E. Gould and Craig S. Harwood, Rubin, Hay & Gould, P.C., Framington, MA, Kathryn L. Ossian and James M. Pelland, Miller, Canfield, Paddock & Stone, P.L.C., Detroit, MI, for defendant MLT, Inc.

Richard G. Ward, John William Mulcrone, Sullivan, Ward, Bone, Tyler & Asher, P.C., Southfield, MI, for defendants Allegro Resorts Dominica, S.A. and Allegro Resorts Marketing Corp.

## ORDER

GADOLA, District Judge.

Before the Court is Defendant MLT's ["MLT"] motion for summary judgment. The Court grants MLT's motion for the reasons stated below.

## I BACKGROUND

Plaintiffs are Michigan residents who allege that they were injured while on vacation in February, 1998 at the Hotel Luperon, which Defendant Hotel Luperon Beach Resorts, S.A. ("Luperon") owned and operated in the Dominican Republic. The source of Plaintiffs' alleged physical harms was the spraying of pesticide several times, beginning on February 18, 1998, during Plaintiffs' stay at the Hotel Luperon. According to Plaintiffs, those ailments lasted after their return to Michigan, and required Plaintiffs to undergo medical treatment in Michigan.

Plaintiffs allege further that they arranged to go on vacation at the Hotel Luperon through Defendant MLT, Inc., a tour operator that conducts business in Michigan. A brochure that MLT provided Plaintiffs stated that customers would have a "worry free" vacation and that MLT's "International Representatives … [would be] available for assistance of any kind" during Plaintiffs' vacation. Upon Plaintiffs' arrival in the Dominican Republic,

MLT's customer-service representative provided Plaintiffs with the names of two points-of-contact with MLT during their vacation. Those two MLT representatives were Amanda Hill and Saffron Arias.

According to Plaintiffs, MLT representatives maintained a hut and/or location prominently displaying the words "MLT Vacations," and maintained a "steady presence" at the Luperon Resort. (Aff. of Sergey Viches ¶ 4, Aff. of Jerry O. Reams ¶ 5, Aff. of Sonja Angelo ¶ 6.) According to Defendant MLT, however, the two representatives did not maintain a hut or even a desk at the hotel and did not stay there. (Declar. of Amanda Hill ¶ 6; Declar. of Saffron Arias ¶ 6.) Defendant MLT contends that it maintained a bulletin board at the resort on which were listed phone numbers of the MLT office in the Dominican Republic and other numbers where representatives could be reached.

Plaintiffs allege that they contacted agents of both Luperon and MLT once the spraying of pesticide began. Those agents, according to Plaintiffs, then undertook a duty to halt the negligent application of pesticide at the Hotel Luperon. (Pl. Resp. at 10–11.) Defendant MLT asserts, however, that Plaintiff Barbara Reams was the first to contact MLT about the spraying, and that she did so on the evening of Thursday, February 19. (Reply Brief at 4–5.)

Defendant MLT further alleges that its representative, Miss Hill, returned Mrs. Reams's call the next morning and told Mrs. Reams that MLT could not control the application of pesticide at the Hotel Luperon. (Reply Brief at 4.) Mrs. Reams agrees that Miss Hill informed her of this fact. (Dep. Tr. of Barbara Reams 23:10–21.) Plaintiffs allege that at least once after the discussion between Mrs. Reams and Miss Hill, pesticide was sprayed at the Hotel Luperon.

Defendant MLT asserts that: it had no knowledge that the Luperon Resort planned to spray insecticide on its premises during Plaintiffs' stay; it had no control over such spraying or any other management detail of the resort; and it had no knowledge of the nature or contents of the insecticide. Defendant also points to the

MLT brochure for the tour at issue, wherein the following limitation-of-liability-clause appears:

**Our Contract With You**

**Our Responsibilities:** MLT Inc. (herein MLT) ... as the charter operator, is responsible to you to provide the services and accommodations that are described as part of this trip. *We are not responsible for personal injury or property damage caused by any negligent act or omission by the air carrier, hotel, or other suppliers of any of the services being offered in connection with this trip,* unless there is negligence on MLT's part. However, in no event shall any party be liable for consequential damages. MLT representatives may be employees of MLT Inc. or may be employees of a third party.

(Exh. A to Aff. of Anita S. Bloom, p. 30) (emphasis added).

Based on the preceding facts, Plaintiffs assert three causes of action regarding MLT: negligence; loss of consortium; and misrepresentation under Michigan's Consumer Protection Act. Defendant MLT now brings a motion for summary judgment regarding those claims.

## II  LEGAL STANDARD

The Court grants a motion for summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and

determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III  ANALYSIS

### A.  Negligence

■ To establish a prima facie case of negligence, Plaintiffs must demonstrate (1) that MLT owed a legal duty to Plaintiffs; (2) that MLT breached or violated the legal duty owed to Plaintiffs; (3) that Plaintiffs suffered damages; and (4) that MLT's breach of duty was a proximate cause of the damages suffered by the Plaintiffs. *See Riddle v. McLouth Steel Products*, 440 Mich. 85, 90 n. 10, 485 N.W.2d 676 (1992).

■ Plaintiffs assert that MLT was vicariously liable for the alleged negligence of the hotel that allegedly harmed Plaintiffs. Plaintiffs base this theory of liability on two chief premises: (1) that MLT assumed such a duty because its brochure stated that MLT representatives would be available to assist Plaintiffs during their stay in the Dominican Republic; and (2) that MLT assumed a duty to make the Luperon Resort cease spraying pesticide when its representatives informed Plaintiffs that they would "take care" of the problem.

■ As a general rule, tour operators are not vicariously liable for the negligent actions of hotels or other independent contractors. *See, e.g., Dow v. Abercrombie & Kent Int'l, Inc.*, No. 99 C 6923, 2000 WL 688949, at *3 (N.D.Ill. May 24, 2000) (citing cases); *Fling v. Hollywood Travel and Tours*, 765 F.Supp. 1302, 1305–06 (N.D.Ohio 1990), *aff'd*, 933 F.2d 1008 (6th Cir.1991). The case of *Catalano v. N.W.A., Inc.*, No. PI98–7768, 1998 WL

777023, at *1 (D.Minn. Sept. 15, 1998) is illustrative. In that case, in which claims against MLT were dismissed based on the "independent contractor" theory, Plaintiff alleged that she was sexually assaulted by an employee of the hotel staff while staying in Jamaica. *Id.* at *7. The *Catalano* court made clear that "MLT is not liable for the subject assault even under federal law because it did not own or control the hotel and its employees. *Under the well-developed body of federal caselaw [sic], tour operators are held harmless for dangerous conditions, acts, or omissions of hotels because they lack ownership and control.*" *Id.* at *7 (emphasis added).

Plaintiffs first rely on the language contained in the tour brochure to establish that this case is an exception to the rule. Specifically, Plaintiffs point to MLT's promise to have one of its "International Representatives ... *available for assistance* of any kind" during Plaintiffs' vacation. That language, Plaintiffs assert, gives rise to the conclusion that MLT assumed a duty to protect Plaintiffs from the harms alleged here.

But promising to *be available* for assistance does not equate to a promise that one would undertake *to provide* any and every type of assistance, nor does it even equate to a promise that any provided assistance necessarily would be successful. Defendant MLT, in short, never promised to intercede between Plaintiffs and the Hotel Luperon regarding pesticide spraying, and it definitely did not promise that any such intercession would be successful. The plain language of MLT's disclaimer, which was prominently posted in the same brochure upon which Plaintiffs rely, also militates against concluding that MLT undertook to protect Plaintiffs from misapplied pesticides.

The *Catalano* court faced the same MLT exculpatory clause found in this case. It then addressed the issue of the validity of such a disclaimer, finding that Minnesota law and the Federal Aviation Administration specifically authorize such clauses

in charter contracts. *See id.* at *4. The court concluded that the MLT disclaimer clause was enforceable because (1) tour operators had professional competition, precluding a wide disparity of bargaining power between operators and consumers, (2) tourism is not an essential service, and (3) FAA regulations permit such disclaimers. *See id.* at *4. The *Catalano* court's rationale thus precluded liability on the part of MLT. *See id.; see also Powell v. Trans Global Tours Operators,* 594 N.W.2d 252, 255 (Minn.App.1999).

This Court finds the approach delineated in *Catalano* persuasive. Although here MLT agreed to make its "International Representatives ... available for assistance of any kind" during Plaintiffs' vacation in its brochure, the best interpretation of that language from Plaintiffs' perspective is that it is a very ambiguous agreement to protect Plaintiffs from their alleged harms. The existence in the very same document of the clear disclaimer that the *Catalano* court found precluded MLT's liability in another case, however, militates strongly against the conclusion that MLT agreed to protect Plaintiffs from misapplied pesticide.

Because the language upon which Plaintiffs assert that MLT assumed a duty is highly ambiguous at best, and because MLT's disclaimer was valid and unambiguous, I conclude that MLT did not assume a duty to protect Plaintiffs from misapplication of pesticide at the Hotel Luperon through its brochure.

■ I next turn to the issue of whether MLT assumed a duty to make the Luperon Resort cease spraying pesticide when its representatives allegedly informed Plaintiffs that they would "take care" of the problem. Plaintiffs assert that, after repeated telephone calls to MLT's number in the Dominican Republic, a representative of MLT said words to the effect that MLT would "take care of the problem." (Pl. Resp. at 10.)

Although there is little case law on point, courts have sometimes held that a statement like "I'll take care of it" equates to the undertaking of a duty. *See Rayden Engineering Corp. v. Church*, 337 Mass. 652, 151 N.E.2d 57, 63 (1958) (reasoning that the speaker had undertaken a duty); *cf. Mercer v. Outboard Marine Corp.*, 101 Ga.App. 6, 112 S.E.2d 694, 695 (1960) (reasoning that "we will take care of it" gave rise to contractual liability). In this context, promising to "take care of" the problem could be understood as a promise to intercede with the Hotel Luperon to halt the spraying. Such a duty, if undertaken, would have to be executed reasonably.

The salient question becomes, therefore, whether Plaintiffs have pleaded facts from which a reasonable juror could conclude that MLT promised to "take care of" the spraying, thereby assuming a duty to stop the application of pesticide at the Hotel Luperon. Plaintiffs rely on the depositions of Sonja Angelo, Sergey Viches, Arkady Ginzburg, and Barbara Reams to establish that they have pleaded facts from which a reasonable juror could infer that MLT assumed a duty to protect Plaintiffs from the application of pesticide. (Pl. Resp. at 10–11.)

Plaintiff Sonja Angelo alleges that, after the first application of pesticide, she spoke with an MLT representative at the booth that she alleges MLT maintained at the Hotel Luperon. She avers that the representative allegedly tried to comfort her and told her "that it will be all right." (Dep. Tr. of Sonja Angelo 73:12–24.) She does not allege exactly when or with whom, however, she had this conversation. Plaintiff Sergey Viches says that, after repeated calls to MLT's telephone number, he finally spoke to a secretary about the problem, and that the secretary made it clear that she was "just kind of a messenger" who had no authority. (Dep. Tr. of Sergey Viches 120:12–16.)

Plaintiff Arkady Ginzburg spoke with two different people answering MLT's number who said words to the effect that they would "take care" of or "try to do something" about the problem. (Dep. Tr. of Arkady Ginzburg 19:14–24; 20:1–19.) Mr. Ginzburg is not sure who the people with whom he spoke were, and he does not know exactly what they said. (Dep. Tr. of Arkady Ginzburg 19:21–24.)

Defendant MLT asserts, conversely, that Plaintiff Barbara Reams was the first to contact MLT about the spraying, and that she did so on the evening of Thursday, February 19. (Reply Brief 4–5.) Defendant MLT further alleges that its representative, Miss Hill, returned Mrs. Reams's call the next morning and told Mrs. Reams that MLT could not control the application of pesticide at the Hotel Luperon. (Reply Brief at 4.) Mrs. Reams agrees that Miss Hill informed her of this fact on February 20. (Dep. Tr. of Barbara Reams 23:10–21.)

In light of these facts, a reasonable juror could only conclude that MLT did not undertake a duty to stop the spraying. Both parties agree, in fact, that MLT, through Miss Hill, expressly disavowed the duty to control application of the pesticide. The Court assumes, as it must, that the other Plaintiffs' descriptions of conversations they had with people who answered the phone number MLT provided, or who were at the booth Plaintiffs allege MLT maintained at the Hotel Luperon, are accurate.

None of those alleged conversations, however, would lead a reasonable person to believe that MLT undertook a duty to stop pesticide spraying at the hotel. Mrs. Angelo spoke with a person who apparently extended sympathy, but no more. Mr. Viches spoke with a person who made it clear that she had no authority to bind MLT. Mr. Ginzburg spoke with a person who may have said that he or she would "take care" or the problem, but who also may have said that he or she would *"try to take care"* of the problem in the same series of conversations. The only person whom Plaintiffs cite for the proposition that MLT assumed a duty, and whose

deposition is at all clear, is Mrs. Reams: and she agrees with MLT that Miss Hill made it clear that MLT did not promise to stop the spraying and, in fact, asserted that there was "nothing she could do about the building." (Dep. Tr. of Barbara Reams 23:10–21.)

The Court therefore concludes that the evidence is so one-sided that Plaintiffs have not adduced facts from which a reasonable juror could conclude that MLT had undertaken a duty to protect Plaintiffs from the negligent application of pesticide at the Hotel Luperon. Because that negates the element of a duty required to create a prima facie case of negligence, the Court grants summary judgment for Defendant MLT as to that cause of action.

**B. Loss of Consortium**

■ Plaintiffs also bring a claim for loss of consortium. This cause of action is recognized in Michigan and has been expanded by the Michigan Supreme Court to include "loss of society, companionship, service, and all other incidents of the marriage relationship." *Washington v. Jones,* 386 Mich. 466, 472, 192 N.W.2d 234 (1971). Being a derivative cause of action, however, its validity in a particular case depends upon whether a plaintiff can show cognizable injury to a spouse. In the instant case, as discussed, plaintiffs can show no cognizable injury for which MLT will be held liable. Accordingly, the Court grants summary judgment for MLT regarding Plaintiffs' claims for loss of consortium.

**C. Misrepresentation Claim pursuant to the Michigan Consumer Protection Act, M.C.L. § 445.901 et seq.**

■ Plaintiffs further allege that MLT is liable under the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.,* because it allegedly misrepresented that their vacation would be "worry-free." Defendant MLT argues that it did not guarantee Plaintiffs' safety in the Dominican Republic. According to MLT, the above-

discussed exculpatory clause in the brochure expressly disclaims liability for any acts or omissions of suppliers of travel services, which proves that MLT was not guaranteeing the safety of its clients. *See Ramage v. Forbes Int'l Inc.,* 987 F.Supp. 810, 816 (S.D.Cal.1997) (holding that "[t]he validity and conspicuousness of the 'Responsibility' disclaimer renders void all implied warranties . . . ."). This Court agrees that MLT's disclaimer would render invalid any implied warranty created by MLT's "worry free" language, and thus grants MLT summary judgment on this claim as well. *Cf. Catalano,* 1998 WL at *11 (analyzing the "worry-free" language throughout Plaintiff's brochure, and holding that "this slogan does not create a warranty because it would be contrary to the other specific provisions of the brochure").

■ An alternate ground for this holding is that the "worry free" language did not create an implied warranty in the first instance, but was an example of mere "puffing." As the *Catalano* court reasoned, the "worry-free" slogan is "an example of the 'mere puffings' often associated with descriptions of travel services, and is not a guarantee of no harm." *Id.* at *9 (citing *Lavine v. General Mills, Inc.,* 519 F.Supp. 332, 336 (N.D.Ga.1981)).

The result in *Catalano* is consistent with Michigan case law, which defines "puffing" as "the expression of an opinion or salesmen's talk in promoting a sale," which may not give rise to an action for fraud. *Van Tassel v. McDonald Corp.,* 159 Mich.App. 745, 750, 407 N.W.2d 6 (1987) (citing *Windham v. Morris,* 370 Mich. 188, 121 N.W.2d 479 (1963)). Defendant MLT's brochure and its slogan of a "worry-free" vacation is, under this definition, mere puffing and does not rise to the level of guaranteeing an "injury-free" vacation. The Court thus bases its grant of summary judgment as to Plaintiff's claim of misrepresentation on the alternate ground that the statements upon which Plaintiffs rely for their claim are mere puffing.

For the reasons set forth above, this Court holds that MLT is entitled to summary judgment as a matter of law with respect to Plaintiffs' claim brought pursuant to the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.*

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED.**

**SO ORDERED.**