**Anne Marie CARLEY and John Carley, Plaintiffs,**

v.

**THEATER DEVELOPMENT FUND and Educational Travel Resources, Inc., Defendants.**

No. 98 Civ. 2690(AGS).

United States District Court, S.D. New York.

Oct. 5, 1998.

Neal A. Goldstein, Jonathan R. Vitarelli, Edelman & Goldstein, P.C., New York City, for plaintiffs.

Rodney E. Gould, Rubin, Hay & Gould, P.C., Framingham, MA, Constantino P. Suriano, Mound, Cotton & Wollan, New York City, for defendants.

## ORDER

SCHWARTZ, District Judge.

Plaintiffs bring this negligence action for damages allegedly resulting from an incident that occurred in St. Petersburg, Russia, during the course of a tour of that city organized by defendants. The case is before the Court on defendants' motion for summary judgment.[1] For the reasons stated herein, defendants' motion is granted in its entirety.

## BACKGROUND

Except as otherwise noted, the following facts are not disputed.[2]

Defendant Educational Travel Resources, Inc. ("ETR") is a corporation organized under the laws of the State of Michigan, with its principal place of business in McLean, Virginia. (Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Def.56.1") ¶ 5.) ETR is a tour operator, engaged in the business of arranging air transportation, accommodations, local transportation, and tickets for various events and destinations for educational and entertainment purposes. (Id. at ¶¶ 7, 14.) Although ETR arranges for these services, it does not actually provide the services to the tour participants. (Id. at ¶ 8.) ETR arranges these tours in various countries in Eastern Europe, including the Czech Republic, Hungary, and Russia. (Id. at ¶¶ 8, 40.) Among the hotels that ETR often books for tour participants is the Hotel Pulkovskaya, in St. Petersburg, Russia. (Id. at ¶¶ 25, 40.)

---

1. Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), or, in the alternative, summary judgment. Rule 12(c) permits a motion to be treated as one for summary judgment if "matters outside the pleadings are presented to, and not excluded by the court...." Here, defendants have submitted relevant documents apart from the pleadings, and plaintiffs have been given adequate notice that the motion could be treated as a motion for summary judgment.

2. Defendants, for the purposes of this motion, do not dispute any of the facts alleged in the plaintiffs' Rule 56.1 Statement of Undisputed Facts. Additionally, plaintiffs have not directly challenged any of the facts discussed here, stating in their opposition to defendants' motion that, with regard to various relevant facts, they "take no position at this time." (Plaintiffs' Memorandum of Law at 18).

Theater Development Fund ("TDF") is a business incorporated in and with its principal place of business in New York. (*Id.* at ¶ 1.) TDF is generally engaged in the business of selling discounted theater tickets through the mail. (*Id.* at ¶ 2.) TDF also operates a travel program whereby TDF will arrange, through tour operators, travel to various cultural destinations featuring theater, opera, and/or ballet performances. (*Id.* at ¶ 3.) TDF had used ETR in 1994 and 1995, booking trips to Prague and Budapest. (*Id.* at ¶ 9.) TDF was satisfied with these experiences. (*Id.* at ¶ 10.) In November, 1995, ETR contacted TDF about offering a cultural trip to St. Petersburg, Russia to TDF's customers. (*Id.* at ¶ 4.) ETR arranged a package tour for TDF consisting of air transportation between New York and St. Petersburg, hotel accommodations in Russia, and tickets for various theatrical performances. (*Id.* at ¶ 14.) TDF received reservation forms and deposits from its customers, and forwarded these forms to ETR. (*Id.* at ¶¶ 15, 16.) With regard to the trip to St. Petersburg, TDF requested that ETR find for TDF's customers "a first class hotel that TDF's members could afford." (*Id.* at ¶ 12.)

Among the hotels selected by ETR to provide services to TDF's customers was the Hotel Pulkovskaya ("Hotel"). (*Id.* at ¶ 13.) All participants in TDF tours organized by ETR stayed at the Hotel. (*Id.* at ¶ 25.) The Hotel Pulkovskaya is a "modern, Finnish designed hotel." (*Id.* at ¶ 39). Although ETR arranged for plaintiffs to stay in the Hotel, ETR does not own, manage, control, or own any stock of the Hotel. (*Id.* at ¶¶ 27, 28, 29.) ETR had sent more than 1500 tour participants to the Hotel from 1991 to March 8, 1998, and no one had ever reported any injuries resulting from the Hotel's windows or from falling out of such windows. (*Id.* at ¶¶ 37, 41.) The Hotel has been widely regarded as an "excellent choice for western tourists, given the fact that it offered modern amenities which were not necessarily found in other hotels in the St. Petersburg area." (*Id.* at ¶ 45.)

Plaintiffs John and Anne Marie Carley, residents of Connecticut, paid approximately $3,400 to TDF and ETR for a tour to Russia,

which departed on March 5, 1996. (Plaintiffs' Statement Pursuant to Local Civil Rule 56.1 ("Pl.56.1") ¶ 2.) This tour consisted of approximately 200 of TDF's customers, who made the trip in three groups. (Def. 56.1 ¶ 35.) At least one agent of ETR participated in the travel portion of plaintiffs' tour. (Pl. 56.1 ¶ 7.)

As part of the documentation provided to plaintiffs and other participants of the tour, ETR provided a document entitled "Tour Terms and Conditions." (Def. 56.1 ¶ 19.) This document advised plaintiffs to purchase various insurance policies, and stated that ETR and associated agents did not consider themselves responsible for accidents that may occur on the tour unless the accident was the result of negligence on their part. (Def. 56.1 ¶ 22.) More specifically, the document provided:

> Cancellation Insurance. We strongly suggest that you consider purchasing a low-premium passenger travel protection program which includes protection for trip cancellation or interruption, accidents, emergencies or sickness.

> Responsibility. [ETR] ... is the tour operator and is responsible for the services provided. However, in the absence of negligence on their part, ETR and other associated agents are not responsible for accidents, loss, detention, annoyance, sickness, loss of enjoyment, upset or disappointment, ... force majeure ... and other causes over which we have no control. All services are subject to the laws of the country in which they are rendered.... ETR chooses its suppliers with great care. However, we do not own or operate any of the accommodations or other facilities used in conjunction with the tour. We therefore cannot accept responsibility for the negligence of the staff of these organizations.

(Def. 56.1 ¶ 22.)

Plaintiffs were booked in the Hotel Pulkovskaya as part of their tour, and stayed there on March 8, 1996. (Pl. 56.1 ¶ 3.) On that date plaintiff Anne Marie Carley sustained serious injuries while trying to open her hotel window. (Affidavit of Anne Marie Carley ¶¶ 19, 21.) Mrs. Carley fell approximately six floors when the window swung into the room

unexpectedly and she fell out. (*Id.* at ¶¶ 19, 20.) Plaintiffs thereafter commenced this diversity action against defendants.

## DISCUSSION

The Court first notes that an award of summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure ("Fed.R.Civ. P.") 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which may be met either by affirmative evidence or by pointing out a lack of evidence pertaining to an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In viewing the evidence presented on a summary judgment motion, "the inferences to be drawn from the underlying facts contained in affidavits, pleadings, depositions, answers to interrogatories, and admissions, must be viewed in the light most favorable to the party opposing the motion." *Fling v. Hollywood Travel & Tours,* 765 F.Supp. 1302, 1304 (N.D.Ohio 1990) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, speculative and conclusory allegations by the non-movant are insufficient to prevent a summary judgment motion from being granted. *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir. 1995). The non-movant is required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Because this Court sits in the state of New York, New York choice of law rules apply in diversity actions. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties appear to agree that New York law governs, the tickets were bought from a New York corporation, plaintiffs flew to St. Petersburg from New York, and plaintiffs brought this action in New York; accordingly, the Court will apply New York law. *Cf. Loeb v. United States Dep't of the Interior,*

793 F.Supp. 431 (E.D.N.Y.1992) (applying New York law when the parties assumed that New York law applied, the plaintiffs were from New York, the case was brought in New York, but the defendants lived and the incident occurred in Connecticut and Wyoming respectively).

In order to establish a prima facie case of negligence under New York law, plaintiffs are required to show: "(1) the existence of a duty flowing from defendant to plaintiff; (2) a breach of this duty; (3) a reasonably close causal connection between the contact and the resulting injury; and (4) actual loss, harm or damage." *See, e.g., Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 79 (2d Cir.1997), *citing Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 555 N.Y.S.2d 46, 47 (N.Y.A.D. 1st Dept.1990), *appeal denied,* 77 N.Y.2d 801, 566 N.Y.S.2d 586, 567 N.E.2d 980 (1991). If one of these essential elements is absent from plaintiffs' case, as a matter of law, then the rest of the plaintiffs' case is immaterial, and summary judgment for the defendants is appropriate.

The Court finds that defendants have shown conclusively that plaintiffs' case lacks evidence sufficient to create a triable issue as to whether the defendants owed the plaintiffs a duty to keep the premises of the Hotel Pulkovskaya safe, for the following reasons. First, TDF and ETR, in their capacities of tour sponsor and operator, owed no duty to plaintiffs to insure the safety and non-negligent operation of the Hotel. Second, no duty was assumed by the defendants through the statements and conduct of their employees. Finally, even if there were some limited duty on the part of the defendants to inquire into reputation and or safety of the hotel, this duty would have been easily met under the circumstances.

■ TDF and ETR, as sponsor and operator of the St. Petersburg tour, were not required to insure the non-negligent performance of suppliers of services on the tour. Neither TDF nor ETR owned or operated the Hotel Pulkovskaya, and are thus being sued solely in their capacities as sponsor and operator of the St. Petersburg tour. The cases in New York uniformly state that spon-

sors and operators of international tours do not have a duty to tour participants to insure the non-negligent performance of hotel services by independent contractors. *See, e.g., Williams v. McCarthy M. Travel,* Civ. # 10–86–210–RJI (Sup.Ct.1986) (dismissing tour operator and travel agent from suit involving alleged rape at hotel); *Sacks v. Loew's Theatres, Inc.,* 47 Misc.2d 854, 263 N.Y.S.2d 253, 255 (N.Y.Sup.1965) (dismissing tour operator from case involving alleged negligence by hotel employees). *See also Dorkin v. American Express Co.,* 74 Misc.2d 673, 345 N.Y.S.2d 891 (N.Y.Sup.1973), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190 (N.Y.A.D. 3rd Dept. 1974) (tour operator not liable for bus accident); *Lowy v. Heimann's Bus Tours, Inc.* 240 A.D.2d 548, 658 N.Y.S.2d 452, 453 (N.Y.A.D. 2nd Dept.1997) (tour operator not liable for chartered bus accident).

■ Further, plaintiffs have not introduced sufficient evidence to raise an issue as to whether ETR and TDF, by the statements and conduct of their employees, assumed a duty to insure the non-negligent operation of the Hotel Pulkovskaya. "Where a person voluntarily assumes the performance of a duty, he is required to perform it carefully; he must not omit to do what an ordinarily prudent man would do in performing the task." *Schwartz v. Greenfield, Stein & Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582, 585 (N.Y.Sup.1977), *citing* 41 N.Y.Jur., Negligence § 22. Often, in order to find this assumption of a duty, courts require a showing that the conduct "somehow placed plaintiff ... in a more vulnerable position than he would have been in had [the defendant] never taken any action at all." *Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 615, 407 N.E.2d 451 (1980). *See also H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 167, 159 N.E. 896 (1928) (Cardozo, J.).

Plaintiffs allege the following actions by Deborah Kolt, an employee of ETR, as sufficient to result in the defendants' having assumed a duty to guarantee the non-negligent operation of the windows of the hotel: (1) Kolt accompanied the plaintiffs on their trip and stayed at the Hotel with them, (2) Kolt translated for the plaintiffs throughout the tour, (3) Kolt inspected the room physically, (4) Kolt spoke with hotel employees about the condition of the room, (5) Kolt told plaintiffs that the room was safe, and (6) Kolt, on her own accord, sought to have the window in the hotel room opened and did so with the assistance of a hotel employee. Plaintiffs claim that this conduct amounted to an express or implied warranty or guaranty that the hotel and hotel window were fit for plaintiffs' use.

The Court finds, however, that, in this case, these actions, even if assumed to be true, do not create an assumption of duty by ETR and TDF to guarantee the non-negligent operation of the hotel and hotel window. Two principle considerations motivate this judgment: (1) the minimal quality and quantity of Ms. Kolt's actions on the tour, and their failure to place plaintiffs in a more vulnerable position than they would have been originally, and (2) the explicit and unequivocal disclaimer of liability in the contract between the parties.

Ms. Kolt attended the tour and facilitated the tour participants' interaction with the service providers with which ETR and TDF had booked. These limited actions are not sufficient to cause plaintiffs to believe reasonably that defendants were warranting the non-negligent conduct of each service provider or that plaintiffs should consider defendants to be responsible for the operation of the Hotel or other tour services. A recent case in this district held even more pervasive conduct not to create such a duty. *See Squires v. Atkinson & Mullen Travel, Inc.,* 97 Civ. 4332(KTD), endorsement op. (S.D.N.Y. Sept. 12, 1997) (awarding summary judgment for defendant tour operator even though defendant's representative was "pervasively present [at the hotel]: It maintained a lobby desk in its own name; was represented by a groundhandler ... conducted orientations ... and distributed brochures") (unpublished). Even if some limited assumption of duty could be implied from the activities of Ms. Kolt, it would not encompass an absolute guarantee that the windows of the hotel were being non-negligently maintained and operated. To hold otherwise would encourage tour guides not to attend events with participants,

and to leave participants at the complete mercy of the local staff.

■ Furthermore, the contract itself acted to prevent plaintiffs from reasonably believing that defendants were warranting the safety of the trip. The contract stated that, "in the absence of negligence on their part, ETR and other associated agents are not responsible for accidents, loss, detention, annoyance, sickness, loss of enjoyment, upset or disappointment, ... force majeure ... and other causes over which [they] have no control." These limitation of liability provisions have been upheld under New York law by both state and federal courts. *See Weiner v. British Overseas Airways Corp.*, 60 A.D.2d 427, 401 N.Y.S.2d 91 (N.Y.A.D. 2nd Dept.1978); *Loeb v. United States Dep't of the Interior*, 793 F.Supp. 431, 439 (E.D.N.Y. 1992). This warning should have put the plaintiffs on notice that there were various aspects of the tour over which the defendants did not have control, and that the defendants were not warranting the non-negligent operation of these services. The Court finds that the operation of an independent contractor hotel is a service over which a reasonably prudent person would not expect his or her tour operator to have control, and plaintiffs have failed to allege facts suggesting otherwise.

Plaintiffs' reliance on the unusual case of *Cohen v. Heritage Motor Tours, Inc.*, 205 A.D.2d 105, 618 N.Y.S.2d 387 (N.Y.A.D. 2nd Dept.1994), is misplaced. In *Cohen,* the plaintiff alleged that the defendant specifically directed her to cross the stepping stones of a brook, which were wet and slippery, causing her to fall. The *Cohen* Court stated that if the defendant "directed the tour participants to follow her across the stones, she assumed a duty to exercise reasonable care since it is claimed that tour participants relied on her to guide them." 618 N.Y.S.2d at 389.

However, the facts of this case are markedly different from *Cohen,* in at least three ways. First, as the *Cohen* court explicitly states, "What distinguishes this case [Cohen] ... is that here the [tour guide] allegedly directed the participants to proceed in a *particular manner.*" 618 N.Y.S.2d at 389 (em-

phasis added). Kolt's role was much more general, merely acting to facilitate the tour participants' enjoyment of the tour, not specifically directing the plaintiffs on how to conduct themselves throughout the trip. There is no allegation that Kolt was instructing the plaintiffs on the safest way to open hotel windows. Second, the decision on how to cross the brook is one that was made on the spot, and "admittedly she [plaintiff] ... was not compelled to cross the brook". *Id.* at 388. The plaintiff in *Cohen,* unlike the plaintiff in this case, could thus allege that the defendant had placed her in a worse position than she had been originally. Last, there is no evidence that the plaintiff in *Cohen* was given the extensive statement disclaiming liability that the plaintiff was in this case. In sum, in *Cohen* a reasonable person might believe that the tour guide was taking full responsibility for the safety of the stepping stones. In this case, however, a reasonable person must necessarily draw the opposite conclusion with regards to the safety of a hotel run by an independent contractor.

Finally, the Court does not decide whether the defendants had some minimal duty to inquire as to reputation and inform or warn the plaintiffs as to any likely dangers or problems with the Hotel. Even if there were some such duty, there is no genuine issue as to whether this duty would have been breached in this case. The uncontroverted facts show that the defendants booked plaintiffs in a hotel with a good reputation and with which western tour companies had ample experience and no reason to believe was unsafe.

In sum, defendants TDF and ETR did not have any duty to the plaintiffs to guarantee the safety or non-negligent operation of the Hotel Pulkovskaya. No duty arose by virtue of their status as sponsor and operator of the St. Petersburg tour, nor was one assumed through the actions of Ms. Kolt. Additionally, even if defendants did have some minimal duty with regard to inquiring about the Hotel and warning plaintiffs about any possible dangers, this duty would have been easily met in this case.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is granted in its entirety and the Complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants and to close the file in this action.

SO ORDERED.