Simone Lacroix MCELHENY,
Plaintiff,

v.

TRANS NATIONAL TRAVEL, INC.,
d/b/a TNT Vacations, and Viva Re-
sorts, Inc., d/b/a Club Fortuna Beach,
Defendants.

No. 00–493L.

United States District Court,
D. Rhode Island.

Sept. 20, 2001.

E. Martin Stutchfield, Winograd, Shine & Zacks, P.C., Providence, R.I., for plaintiff.

Craig S. Harwood, Rubin, Hay & Gould, P.C., Framingham, MA, for defendants.

## ORDER

LAGUEUX, District Judge.

There being no objection filed to the Report and Recommendation of United States Magistrate Judge David L. Martin filed on August 24, 2001 in the above-captioned matter, the Report and Recommendation is accepted and adopted pursuant to Title 28 United States Code § 636(b)(1). Therefore, defendant Trans National Travel, Inc.'s Motion for Summary Judgment is granted on both counts of the Complaint.

## REPORT AND RECOMMENDATION

MARTIN, United States Magistrate Judge.

Before the court is the Motion of Defendant Trans National Travel, Inc. (TNT), to dismiss it from the instant action pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Alternatively, TNT requests that the Court dismiss the action under the doctrine of *forum non conveniens* or transfer the action to the United States District Court for the District of Massachusetts on the basis of a forum selection clause. Plaintiff Simone LaCroix McElheny (Plaintiff) has objected to the motion. This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(a). After listening to oral arguments, reviewing the memoranda submitted, and performing independent research, I recommend that TNT's motion for summary judgment be granted.

### Facts[1] and Travel

TNT is a Massachusetts corporation, *see* Notice to United States District Court

---

1. The facts are taken from the Complaint unless otherwise noted. TNT filed its Local Rule 12.1(a)(1) Statement of Undisputed Material Facts in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (TNT's SUMF) with its motion and memorandum on October 20, 2000. Plaintiff did not file Plaintiff's Statement of Material Facts as to Which There Is a Genuine Issue Necessary to Be

of Removal (Notice of Removal) at ¶ 3(b), engaged in the business of selling and marketing vacations and related services to Rhode Island consumers.[2] Viva Resorts, Inc. (Viva Resorts), is a corporation doing business as Club Fortuna Beach on Grand Bahama Island.[3] Plaintiff is a Rhode Island resident who booked a vacation with TNT on or about March 10, 1999, through a Rhode Island travel agent,[4] to stay at the Club Fortuna Beach resort. Plaintiff alleges that she paid for the vacation but did not sign TNT's tour participant contract. Rather, she avers, she signed only on the line indicating that she declined to buy travel insurance. *See*

---

Litigated (Plaintiff's SMF) until January 11, 2001, after TNT had pointed out in its Reply Memorandum of Trans National Travel, Inc. to Plaintiff's Opposition to its Motion to Dismiss or, in the Alternative, for Summary Judgment (TNT's Reply) that Plaintiff had failed to do so. *See* TNT's Reply at 1–2. Plaintiff objects to TNT's SUMF, which is based on three affidavits, *see* Affidavit of Diana Haley in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Haley Aff.); Affidavit of Shelly S. Bethel in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Bethel Aff.); Affidavit of Craig S. Harwood in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Harwood Aff.), generally as inadmissible hearsay, conclusory statements, lacking in foundation, or unsupported by business records, *see* Plaintiff's SMF ¶¶ 1–3, 5–11, 13–19; *see also* Plaintiff's Memorandum of Law in Support of Her Objection to Defendant's Motion for Summary Judgment and Motion to Dismiss (Plaintiff's Memo.) at 1 ("[I]t is evident that many of the statements made in the affidavits filed by TNT were not made on personal knowledge and would not be admissible in evidence."); Plaintiff's Response to Defendant's Reply Memorandum (Plaintiff's Response) at 2 ("TNT's motion relies upon affidavits which contain hearsay and conclusory statements as to material facts and issues in the case."). Plaintiff also notes that Mr. Harwood is one of TNT's attorneys. *See* Plaintiff's Response at 2. The court does not rely on any statements in the Harwood Aff. As to the other affidavits, the court notes that the affiants all state that they are relying on their personal knowledge. *See* Haley Aff.; Bethel Aff. Moreover, courts have accepted similar affidavits in cases involving tour operators. *See, e.g., Passero v. DHC Hotels & Resorts, Inc.*, 981 F.Supp. 742, 746 n. 2 (D.Conn.1996). Additionally, Plaintiff, offers no affirmative evidence to contradict TNT's affidavits. Only ¶¶ 4, 12, and 20 of Plaintiff's SMF offer specific facts in opposition to TNT's SUMF, and they do not alter the court's conclusion that summary judgment should be granted.

2. TNT states that it is a "federally regulated charter tour operator." TNT's SUMF ¶ 1; *see also* Haley Aff. ¶¶ 2, 10. Plaintiff disputes that TNT is a federally regulated tour operator, arguing that TNT's SUMF, based in part on the Haley Aff., contains "[f]acts not established, Haley's statements lack foundation, inadmissible hearsay which does not comply with business record exception contained in Rule 803." Plaintiff's SMF ¶ 1. The court need not determine whether TNT is or is not federally regulated, as resolution of this dispute is not material to the court's disposition of the matter.

3. On February 7, 2001, the Clerk of Court received a letter from the attorneys for Club Viva Fortuna (presumably the other defendant in this action), which states that it does not intend to submit to the jurisdiction of this court on grounds of *forum non conveniens*. *See* Letter from Cleare to Clerk, Civil Actions, United States District Court, District of Rhode Island, of 1/26/01.

4. Plaintiff contends that the agent who booked her vacation, Joann Waldheger of the Travel Source, Kingston, Rhode Island, is an agent of TNT. *See* Affidavit Simone LaCroix–McElheny (Plaintiff's Aff.) ¶ 3. TNT states that the agent is, in fact, Plaintiff's travel agent. *See* Haley Dec. ¶ 4; *see also* Haley Aff., Ex. D, Letter from Waldheger to Haley of 12/13/00 ("I have been Ms. Mc[E]lheny's travel agent for several years without complications."). Plaintiff provides no support for her assertion that Ms. Waldheger is TNT's agent. In any event, resolution of this dispute is not necessary to the court's decision.

Plaintiff's SMF ¶ 12; *see also* Plaintiff's Aff. ¶ 5; Supplemental Affidavit of Simone LaCroix (Plaintiff's Supp. Aff.) ¶ 2. Plaintiff additionally states that she never received or read the Tour Participant Contract, *see* Plaintiff's Aff. ¶ 11, which contains TNT's disclaimer of liability, *see* Affidavit of Diana Haley in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Haley Aff.), Ex. A, TNT Vacations Brochure, 1999 TNT Vacations Tour Participant Contract at i31.

Plaintiff states that on March 20, 1999, the second day of her vacation, *see* Plain-

tiff's Aff. ¶ 24, she met with a certain representative[5] at the Club Fortuna Beach. Plaintiff asserts that this representative intended to sell Plaintiff vacation-related products, including a time-share. Plaintiff pulled up a chair to sit with the representative, but due to a defect (Plaintiff alleges that the chair had only three legs), Plaintiff slid and fell off the chair. As a result, Plaintiff broke her ankle. Plaintiff's injury required medical treatment.[6]

Plaintiff filed the instant lawsuit against TNT and Viva Resorts (collectively Defen-

**5.** Plaintiff states in her Complaint that she met with a TNT representative. *See* Complaint ¶¶ 6, 8. TNT disputes that the individual with whom Plaintiff met was a TNT representative. *See* Haley Aff. ¶ 7. According to TNT, their only destination representative on Grand Bahama Island at the time of Plaintiff's trip was Shelly Bethel. *See* TNT's SUMF ¶ 7; *see also* Haley Aff. ¶ 7; Bethel Aff. ¶ 3. Ms. Bethel states that she never attended a presentation or meeting regarding time-shares at Club Fortuna Beach, *see* TNT's SUMF 10; *see also* Bethel Aff. ¶ 5, nor did she meet with Plaintiff on March 20, 1999, *see* Bethel Aff. ¶ 3. Plaintiff states that "[i]n my opinion, Shelly Bethel was not the only representative of TNT's on Grand Bahama Island at the time of my trip in March of 1999," Plaintiff's Aff. ¶ 23, and recalls dealing with "a TNT representative at the Club Fortuna Beach resort who called herself Patrice," *id.* ¶ 22. "Patrice" is identified as Patrice Handfield, who works for Executive Tours which provided ground handling for TNT. *See* Declaration of Diana Haley in Support of Reply of Trans National Travel, Inc. to Plaintiff's Objection to its Motion to Dismiss or, in the Alternative, for Summary Judgment (Haley Dec.) ¶ 6; *see also* Plaintiff's Aff. ¶ 4. Whether or not Ms. Bethel was TNT's only destination representative on Grand Bahama or whether Patrice Handfield was an independent contractor, as TNT maintains, *see* Haley Dec. ¶ 6, or an employee of TNT, as Plaintiff asserts, *see* Plaintiff's Aff. ¶¶ 22, 37, is not material to the resolution of this matter as Plaintiff apparently concedes that neither was the woman with whom Plaintiff met regarding time shares on March 20, 1999, *see* Plain-

tiff's Aff. ¶ 25 ("I and my two friends met with Vicky a representative who was promoting the sale of time share vacation weeks at the hotel."). "Vicky" is Vicki Martel, a representative of Club Fortuna Beach. *See* Haley Aff. ¶ 7.

Plaintiff nowhere asserts that Vicki Martel was an employee or agent of TNT. In disputing TNT's claim that Shelly Bethel was TNT's only destination representative on Grand Bahama Island at the time of Plaintiff's trip, Plaintiff only mentions Patrice Handfield as a possibility, not Vicki Martel. *See* Plaintiff's SMF ¶ 4. While Plaintiff's Response to Defendant's Reply Memorandum (Plaintiff's Response) states that "TNT argues that Patrice Handfield has never been a TNT destination representative and that Vicki Martel was their only destination representative on Grand Bahama Island," Plaintiff's Response at 6, in fact TNT has never argued that *Vicki Martel* was TNT's only destination representative (or any kind of representative for TNT). Rather, TNT contends that *Shelly Bethel* was its only destination representative. *See* TNT's SUMF ¶ 7; Haley Aff. ¶ 7; Bethel Aff. ¶ 3. The references to Ms. Martel on page 6 of Plaintiff's Response are apparently in error, as Plaintiff on the next page (in the same section) refers to "Handfield and Bethel," Plaintiff's Response at 7.

**6.** In her Complaint Plaintiff states that she required medical treatment both in the Bahamas and in the United States, *see* Complaint, Count I ¶ 10, but she subsequently avers that she declined treatment in the Bahamas, *see* Plaintiff's Aff. ¶¶ 32–33, 39.

dants) in the Rhode Island Superior Court for Providence and Bristol Counties on July 18, 2000. In Count. I of her Complaint, Plaintiff alleges that Defendants breached their duty to Plaintiff by failing to ensure that the premises were safe and by failing to warn Plaintiff that the chair was defective. Plaintiff alleges in Count II that TNT violated the Rhode Island Deceptive Trade Practices Act by forging her signature on a reservation form agreement and using that form in an attempt to induce Plaintiff to drop her claim.

On September 29, 2000, TNT removed the action to federal court. The Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Motion for Summary Judgment) was filed on October 20, 2000. Plaintiff on November 30, 2000, filed her Objection to Defendant's Motion for Summary Judgment and Motion to Dismiss (Plaintiff's Objection). The Motion for Summary Judgment was subsequently referred to this Magistrate Judge, and a hearing was held on February 8, 2001. The Motion for Summary Judgment was taken under advisement.

TNT subsequently filed the Motion of Trans National Travel, Inc. for Leave to File a Supplemental Affidavit in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion for Leave). Plaintiff objected to that motion as well, and a hearing was held on that matter on March 28, 2001. The court determined that it would decide the Motion for Leave when it addressed the underlying Motion for Summary Judgment.

## Discussion

### I. Law

#### A. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well pleaded allegations and give the plaintiff the benefit of all reasonable inferences. *See Cooperman v. Individual Inc.*, 171 F.3d 43, 46 (1st Cir.1999); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 991 (1st Cir.1996). "Dismissal ... is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman*, 171 F.3d at 46; *see also Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). The court, in ruling on a 12(b)(6) motion, "does not look beyond the four corners of the complaint." *Kachougian v. United States*, No. 96–508–T, 1999 WL 973533, at *3 (D.R.I. Sept.10, 1999). "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." FedR. CivP. 12(b)(6).

In the instant case, "[s]ince the motion is captioned as one for summary judgment and includes supporting extrinsic materials and since [Plaintiff] responded with her own affidavit, the motion is treated as one for summary judgment." *Patrick v. Massachusetts Port Auth.*, 141 F.Supp.2d 180, 186 (D.N.H.2001); *see also Sova v. Apple Vacations*, 984 F.Supp. 1136, 1137 (S.D.Ohio 1997) ("Since the parties have presented evidence outside the pleadings, the court will treat this motion as one for summary judgment."); *Ramage v. Forbes Int'l Inc.*, 987 F.Supp. 810, (C.D.Cal.1997) ("If a Rule 12(b)(6) motion presents matters outside the pleadings, the motion shall be treated as one for summary judgment and disposed of under Rule 56."); *Honeycutt v. Tour Carriage, Inc.*, 997 F.Supp. 694, 698 (W.D.N.C.1996) ("Because [the defendants] have submitted affidavits in support of their motions, their motion to dismiss is converted to a motion for summary judgment.").

## B. Summary Judgment

When determining a motion for summary judgment, a court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 820 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which may be met either by affirmative evidence or by pointing out a lack of evidence pertaining to an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant's initial burden is met, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a *genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted) (italics in original).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (italics in original). The Court of Appeals for the First Circuit has stated that:

> The language of Rule 56(c) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both "genuine" and "material." A material issue is one which affects the outcome of the litigation. To be considered "genuine" for Rule 56 purposes a material issue must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." The evidence manifesting the dispute must be "substantial[,]" going beyond the allegations of the complaint.

*Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) (citations omitted) (first alteration in original).

Thus, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Instead, the non-moving party must provide affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted).

## C. Choice of Law

TNT argues that Massachusetts law should apply, *see* Memorandum in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (TNT's Memo.) at 2 n. 3, while Plaintiff contends that Rhode Island law should apply, *see* Plaintiff's Memorandum of Law in Support of Her Objection to Defendant's Motion for Summary Judgment and Motion to Dismiss (Plaintiff's Memo.) at 3–4. However, the court need

not reach this issue as the outcome is the same whether Massachusetts or Rhode Island law is applied.[7] *See Passero v. DHC Hotels and Resorts, Inc.*, 981 F.Supp. 742, 744 n. 1 (D.Conn.1996) ("Neither party has addressed choice of law. However, since this case is governed by the law of either Massachusetts, Rhode Island, or Connecticut, and there is no difference in the relevant law of these states, we need not decide this issue."); *cf. Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir.1993) ("We need not resolve the [choice of law] issue, however, as the outcome is the same under the substantive law of either jurisdiction."); *Patrick v. Massachusetts Port Auth.*, 141 F.Supp.2d 180, 187 (D.N.H. 2001) ("Since it appears that no actual conflict exists as to the law of the interested states, no further analysis is required....").

## II. Plaintiff's Complaint

### A. Count I—Negligence

Plaintiff alleges that "Defendants breached their duty to Plaintiff by failing to ensure that the premises were safe and by failing to warn Plaintiff of the defect in the chair." Complaint, Count I ¶ 9. TNT contends that it is entitled to dismissal or summary judgment either on common law grounds or on the basis of the disclaimer in its brochure that it is not liable for any acts or omissions of hotels or other service providers. *See* TNT's Memo. at 1–2, 8.

#### 1. Common Law

TNT contends that "TNT is entitled to dismissal or summary judgment under fundamental common law principles because it has never owned, operated, managed, or controlled Club Fortuna Beach Resort and had no knowledge that any chair at the hotel was defective ... [and] travel agents are not liable for accidents at independently owned hotels." TNT's Memo. at 1. Plaintiff counters that "TNT is neither a traditional type travel agent nor merely a tour operator." Plaintiff's Memo. at 2. Therefore, Plaintiff asserts that the cases cited by TNT are inapplicable or distinguishable. *See id.*

##### a. A tour operator is not liable for tour participant injuries at independently owned and operated hotels.

■ "A defendant cannot be liable under a theory of negligence unless it owes a duty of care to the plaintiff." *Volpe v. Fleet*, 710 A.2d 661, 663 (R.I.1998); *accord O'Sullivan v. Shaw*, 431 Mass. 201, 726 N.E.2d 951, 954 (2000) ("Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff."). The existence of a duty is a question of law for the court to decide. *See id.* "If [the court determines that] no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I.1985) *accord DaRoza v. Arter*, 416 Mass. 377, 622 N.E.2d 604, 605 (1993) ("We conclude that the entry of summary judgment for the defendants was proper because the [defendants] owed no duty to the plaintiff."). Thus, the question before

---

7. *See, e.g., Kennedy v. Tempest*, 594 A.2d 385, 388 (R.I.1991) ("To prevail in a negligence action, the plaintiff must introduce competent evidence to establish not only that the defendant owed a duty of care to the plaintiff and that that duty was breached, but also that the defendant's negligence was the proximate cause of the plaintiff's injury."); *O'Sullivan v. Shaw*, 726 N.E.2d 951, 954 (Mass.2000) ("Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury.").

the court is whether TNT had a duty to Plaintiff.

Courts have generally declined to impose liability on travel agents and tour operators for injuries sustained by clients aboard vessels, buses and other modes of transportation or at hotels or other destinations. The courts have usually found that there never existed a relationship which would have given rise to a duty on the part of the travel agent to investigate the safety of instrumentalities over which it had no control or knowledge. *See, e.g., Ross v. Trans Nat'l Travel,* 1990 WL 79229 (D.Mass. 1990); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332 (N.D.Ga.1981); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1317 (D.Kan.1987). *See also Wilson v. American Trans. Air, Inc.,* 874 F.2d 386, 390 (1989), *aff'd in part and remanded on other grounds,* 916 F.2d 1239 (7th Cir. 1990). This is so because the sole function of the travel agent is "to sell and arrange travel tours for those who might wish to purchase them." *Lavine,* 519 F.Supp. at 337.

*McAleer v. Smith,* 860 F.Supp. 924, 931 (D.R.I.1994), *aff'd in part,* 57 F.3d 109 (1st Cir.1995).

TNT avers that:

As a tour operator, TNT assembles the components of a tour package and sells the package to the public through retail travel agencies. It does not own or operate the components of the package.

. . . .

TNT has never owned, operated, managed, controlled, supervised, or had a financial interest in Club Fortuna Beach Resort or any company that owns or operates it, and TNT has never been owned, operated, managed, controlled, or supervised by the hotel or any company that owns, operates, manages, or controls it. Club Fortuna Beach Resort and any company that owns or operates it are completely independent of TNT.

*See* TNT's SUMF ¶¶ 2, 6 (citations omitted); *see also* Haley Aff. ¶¶ 2–3. The court recognizes that Plaintiff has objected to TNT's SUMF (and the affidavits upon which it is based) as lacking in foundation and hearsay. *See* Plaintiff's SMF ¶¶ 2–3. As noted previously, the affiants upon whose affidavits TNT's SUMF is based all state that they are relying on their personal knowledge. *See* Haley Aff.; Bethel Aff.; Harwood Aff. Additionally, other courts have accepted affidavit's similar to that of Ms. Haley. *See, e.g., Passero v. DHC Hotels & Resorts, Inc.,* 981 F.Supp. 742, 746 n. 2 (D.Conn.1996) (accepting affidavit from TNT's Assistant Vice President of Customer and Business Relations). Although the court must draw all reasonable inferences in the nonmoving party's favor in ruling on a motion for summary judgment, *see Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 820 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990), this court finds it unreasonable to infer that Ms. Haley, a TNT employee since 1991 and its Manager of Customer Service since 1993, *see* Haley Aff. ¶ 1, would not know whether or not the company for which she worked owned the hotel with which she dealt.

In an apparent abundance of caution, TNT filed its Motion of Trans National Travel, Inc. for Leave to File a Supplemental Affidavit in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion for Leave).[8] *See*

---

**8.** By a separate order dated August 24, 2001, the court granted the Motion of Trans National Travel, Inc. for Leave to File a Supplemental Affidavit in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion for Leave). Plaintiff ob-

Motion for Leave at 3. The Affidavit of John C. Dircks in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Dircks Aff.) in essence echoes TNT's position, as stated in the Haley Aff., that it does not own or control Club Fortuna Beach. Mr. Dircks, TNT's President, states in relevant part as follows:

> I am President of Trans National Travel, Inc., d/b/a TNT Vacations (TNT), and have held that position since January 1, 2000. I was Chief Operating Officer and Chief Financial Officer of TNT from July 1998 until December 31, 1999. I was Chief Financial Officer of TNT from February 1996 until July 1998.
>
> . . . .
>
> In the course of my current and previous positions with TNT, I have gained firsthand knowledge of the corporate structure of TNT, the nature of its business as a tour operator, what it owns and does not own, and its relationship with the suppliers of business to its tours, such as hotels and airlines.

> . . . .
>
> TNT . . . assembles the components of tour packages and sells the packages to the public through retail travel agencies. It does not own or operate the components of the packages. . . .
>
> In particular, TNT has never owned, operated, managed, controlled, supervised, or had a financial interest in Club Fortuna Beach Resort on Grand Bahama island in the Bahamas. Conversely, TNT has never been owned, operated, managed, controlled, or supervised by the hotel or any company that owns, operates, manages, or controls Club Fortuna Beach Resort. Club Fortuna Beach Resort and any company that owns or operates it are completely independent of TNT. TNT simply reserves rooms at the hotel at a net rate provided by the hotel and includes the reserved rooms in its packages.

Dircks Aff. ¶¶ 1, 3, 5–6.[9]

Plaintiff disputes TNT's contention that it does not own, operate, or control Club

---

jected to TNT's Motion for Leave on the basis that it should have been filed prior to the hearing on the underlying Motion for Summary Judgment pursuant to Local R. 12.1(c). *See* Plaintiff's Memorandum of Law in Support of Her Objection to Defendant's Motion for Leave to File a Supplemental Affidavit at 1–2. The court initially notes that Local R. 12.1(c) refers to "[a]ll affidavits in opposition to a motion for summary judgment. . . ." D.R.I. Local R. 12.1(c). TNT's Motion for Leave is, of course, in support of its Motion for Summary Judgment. The court additionally observes that Plaintiff is hardly in a position to invoke Local R. 12.1, having failed to "serve and file, together with the opposing memorandum of law required under Rule 12 of these Rules, a concise statement of all material facts as to which [s]he contends there is a genuine issue necessary to be litigated." *Id.* As stated previously, *see* note 1, Plaintiff filed her SMF on January 11, 2001, after TNT had reminded her of her duty to do so.

Moreover, the Affidavit of John C. Dircks in Support of Motion of Trans National Travel, Inc. to Dismiss or, in the Alternative, for Summary Judgment (Dircks Aff.) in the main echoes the Haley Aff. Thus, the court sees no prejudice to Plaintiff in accepting the Dircks Aff. to the extent that it restates the points made in the Haley Aff. and offers no new evidence.

At the hearing on TNT's Motion for Leave, Plaintiff's counsel indicated that if TNT's Motion for Leave were granted, he would file a motion for leave to depose Mr. Dircks. However, assuming that Plaintiff's counsel intended to seek relief pursuant to Fed.R.Civ.P. 56(f), Plaintiff "has not made a sufficient showing that discovery would aid her in maintaining her claims to invoke the rule's protection." *Patrick v. Massachusetts Port Auth.,* 141 F.Supp.2d 180, 188 (D.N.H.2001).

**9.** TNT also notes that its Tour Participant Contract states that "in no case does Operator

Fortuna Beach. *See* Plaintiff's SMF ¶¶ 2–3. Beyond the general objections in Plaintiff's SMF, however, she provides no affirmative evidence of TNT's ownership, operation, or control of Club Fortuna Beach. *See Hahn v. Sargent*, 523 F.2d 461, 467 (1st Cir.1975) (plaintiff not entitled to build case on speculation and conjecture). In her affidavit, Plaintiff states that "[i]n my opinion, TNT co-operated in the control, management and supervision of the Club Fortuna Beach hotel on Grand Bahama Island...." Plaintiff's Aff. ¶ 13 (emphasis added). Plaintiff argues that TNT's involvement in her vacation, presence in the hotel, and brochure language transform TNT's role into that of an innkeeper rather than a mere tour operator. *See* Plaintiff's Memo. at 2–5; *see also* Plaintiff's Response at 3. The court addresses each of these contentions in turn.

Plaintiff states in her affidavit that:

TNT and its agents totally controlled my trip and stay at the Club Fortuna Beach in Grand Bahama Island from departure to my return to Boston.

At Logan Airport, I was greeted by TNT agents who assisted me with check in and boarding.

Upon arrival at Grand Bahama Island, I was met by agents of TNT and taken directly to the hotel in a taxi/limousine arranged for by TNT.

Upon arrival at the hotel, I was assisted by a TNT representative in getting my assigned room and told when and where to meet for an orientation presentation on the hotel and activities.

At the orientation meeting a representative of both TNT and the hotel was present. Part of the orientation involved information on the opportunity to buy a time share at the hotel and later TNT arranged games for its guests in which a stay at a time share may have been given as a prize.

Plaintiff's Aff. ¶¶ 15–19; *see also* Plaintiff's Memo. at 3 ("TNT becomes intimately involved in its client's vacation and, in this case, had an 'office'[10] in the hotel, staffed on a daily basis, held meetings in the hotel for its customers and held games and contests for its customers in the hotel and lent assistance to the hotel management in selling time shares."); Plaintiff's Response at 4.

In *Carley v. Theater Development Fund*, 22 F.Supp.2d 224 (S.D.N.Y.1998), one of the plaintiffs was seriously injured while attempting to open her hotel room window. *See id.* at 226. The court granted the defendant tour operators' motion for summary judgment despite the plaintiffs' argument that the actions of the tour operators' employees gave rise to a duty to insure the non-negligent operation of the hotel. *See id.* at 225, 227. In *Carley:*

Plaintiffs allege[d] the following actions by Deborah Kolt, an employee of ETR, as sufficient to result in the defendants' having assumed a duty to guaran-

[TNT] own, operate or control any of the firms or vendors which will provide goods and services for the trip (hotels, air or land transportation, meals etc.) or for any option which may be available (optional side trips, car rentals, etc.)." Haley Aff. I, Exhibit A, TNT Vacations Brochure, 1999 TNT Vacations Tour Participant Contract at i31. Plaintiff contends that the Tour Participant Contract is not binding because she did not sign it. *See* Plaintiff's Memo. at 5. Because the court has determined that summary judgment should be granted on common law grounds, the court need not address the issue of whether the Tour Participant Contract is binding. The court merely references the Tour Participant Contract as further evidence of TNT's lack of ownership, operation, or control of Club Fortuna Beach.

**10.** The "office" to which Plaintiff refers is, according to TNT, a desk and chairs in the lobby. *See* Haley Dec. ¶ 8.

tee the non-negligent operation of the windows of the hotel: (1) Kolt accompanied the plaintiffs on their trip and stayed at the Hotel with them, (2) Kolt translated for the plaintiffs throughout the tour, (3) Kolt inspected the room physically, (4) Kolt spoke with hotel employees about the condition of the room, (5) Kolt told plaintiffs that the room was safe, and (6) Kolt, on her own accord, sought to have the window in the hotel room opened and did so with the assistance of a hotel employee. Plaintiffs claim that this conduct amounted to an express or implied warranty or guaranty that the hotel and hotel window were fit for plaintiffs' use.

*Id.* at 228. The court, however, found that "in this case, these actions, even if assumed to be true, do not create an assumption of duty by ETR and TDF to guarantee the non-negligent operation of the hotel and hotel window." *Id.* The court was motivated in part by "the minimal quality and quantity of Ms. Kolt's actions on the tour, and their failure to place plaintiffs in a more vulnerable position than they would have been originally...." *Id.* The *Carley* court further observed that:

> Ms. Kolt attended the tour and facilitated the tour participants' interaction with the service providers with which ETR and TDF had booked. These limited actions are not sufficient to cause plaintiffs to believe reasonably that defendants were warranting the non-negligent conduct of each service provider or that plaintiffs should consider defendants to be responsible for the operation of the Hotel or other tour services.

*Id.* at 228.

In the instant case, TNT was less involved in Plaintiff's trip than were the defendants in *Carley*. TNT provided assistance at the airports (in Boston and the Bahamas), hotel transfers and check-in assistance, orientation sessions, a bulletin board in the hotel lobby, and various activities for tour participants. This "involvement" gives rise to no duty on TNT's part, because "the operation of an independent contractor is a service over which a reasonably prudent person would not expect his or her tour operator to have control, and plaintiffs have failed to allege facts suggesting otherwise," *id.* at 229; *see also Squires v. Atkinson & Mullen Travel, Inc.*, No. 97 CIV. 4332 KTD., 1997 WL 1068659, at *1 (S.D.N.Y. Sept.23, 1997) (rejecting plaintiffs' argument that summary judgment was unavailable because there were issues of fact regarding the tour operator's involvement in the hotel's management and operation); *Passero v. DHC Hotels & Resorts, Inc.*, 981 F.Supp. 742, 745 (D.Conn.1996) (rejecting plaintiff's argument that summary judgment was inappropriate due to a "question of fact as to the full scope of the operator's involvement with the accommodations and travel arrangements made by the travel agent," because "there are no facts from which one could infer that TNT owns, operates, manages, or supervises the [hotel].").

The same is true for TNT's "presence" in the Club Fortuna Beach. Plaintiff maintains that "[a] TNT representative was physically at the hotel each day of my stay. TNT had space in the hotel lobby where it prominently placed a bulletin board showing the day's activities, tours and arrangements for departure." Plaintiff's Aff. ¶ 20. Thus, in Plaintiff's view, because of "the presence of its representatives in the hotel and its public areas, TNT does have a duty and responsibility to ensure that the hotel is safe and secure for each and every one of its customers." Plaintiff's Response at 5. The case law, however, does not support Plaintiff's contention that TNT's presence in the hotel gives rise to a duty to Plaintiff.

In *Viches v. MLT, Inc.,* 124 F.Supp.2d 1092 (E.D.Mich.2000), for example, the plaintiffs sought to hold a tour operator liable for injuries they allegedly suffered as a result of spraying of pesticide at the hotel where they were staying. *See id.* at 1094. The *Viches* court noted that:

> According to Plaintiffs, MLT representatives maintained a hut and/or location prominently displaying the words "MLT Vacations," and maintained a "steady presence" at the Luperon Resort. According to Defendant MLT, however, the two representatives did not maintain a hut or even a desk at the at the hotel and did not stay there. Defendant MLT contends that it maintained a bulletin board at the resort on which were listed phone numbers of the MLT office in the Dominican Republic and other numbers where representatives could be reached.

*Id.* (citations omitted). Despite this presence, the court granted the tour operator's motion for summary judgment. *See id.*

Similarly, in *Squires v. Atkinson & Mullen Travel, Inc.,* No. 97 CIV. 4332 KTD., 1997 WL 1068659 (S.D.N.Y. Sept.23, 1997), the plaintiffs sued after one suffered a broken ankle when she slipped and fell on the hotel's sidewalk. *See id.* at *1. The court observed that:

> When plaintiffs arrived at the Solymar, they found [the travel agency] to be pervasively present: It maintained a lobby desk in its own name; was represented by a "groundhandler[,]" "Amstar[,]" which it now acknowledges was its own subsidiary; it conducted "orientations" at the hotel, and distributed brochures (one of which was given to plaintiffs ...), promoting various side tours (and *not* incorporating any form of disclaimer of liability at all); and it sold and conducted those tours, through its "Amstar" subsidiary.

*Id.* (last alteration in original). Again, despite this presence, the court granted summary judgment in the travel agency's favor. *See id.* at *1–2.

In the instant case, TNT admits that:

> TNT's destination representative on Grand Bahama is required to visit daily each hotel on the island at which TNT tour participants are staying to answer any questions they might have.... Club Fortuna Beach, like other hotels, provides an area where TNT and other tour operators, including Executive Tours, can maintain a bulletin board to relay information to tour participants, and a desk and chairs where the tour operators' representatives can meet with tour participants while answering their questions.

Haley Dec. ¶ 8. However, even assuming that Executive Tours, TNT's groundhandler, is a agent of TNT (as Plaintiff contends), *see* Plaintiff's Response at 6–8, not an independent contractor (as TNT maintains), *see* Haley Dec. ¶ 6, TNT's limited presence Club Fortuna Beach, as was the situation in *Viches* and *Squires,* does not give rise to a duty on TNT's part to ensure Plaintiff's safety at the hotel.

Likewise, the language in TNT's brochure does not imply ownership, operation, or control of Club Fortuna Beach. Plaintiff alleges that "TNT monitored the operation of the hotel describing it as 'dependable' in its brochures." Plaintiff's Memo. at 2–3; *see also* Plaintiff's Aff. ¶¶ 13–14 ("[I]n its brochure TNT describes its relationship with the hotel as 'Exclusive' and as having '3 suns' ... [a]ccording to TNT's 'Sun Rating System' a 3 Sun hotel is '[a] *dependable,* comfortable hotel with conventional rooms, amenities and public areas. Suited for those wanting good value and more personalized service.' ") (citation omitted) (underlining in original). However, courts have rejected assertions that

brochure language gives rise to a heightened duty on a tour operator's part. In *Passero,* for example, the court summarized the case law on this point:

> Moreover, the court in *Wilson* explicitly rejected the contention urged by plaintiff here—that a tour operator assumes a heightened duty to investigate and warn when it includes language in its brochure that is designed to put the plaintiff's mind at rest. 874 F.2d at 391. "[A] general promise that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff." *Id. See also Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578, 585–586 (E.D.Pa.1985) ("statements in defendant's advertisements cannot reasonably be interpreted to warrant plaintiffs' safety if they were to go horseback riding"), *aff'd* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332, 336, 338 (N.D.Ga.1981) (general promise that trip would be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff). Thus, while TNT's brochure contains language to the effect that TNT vacations include "service from pre-trip to post-trip!" and specifies the ways in which TNT service "begins before you leave [and] stays throughout your vacation," this language does not, and cannot, be read as a guarantee that TNT on-site representatives will protect plaintiff from injuring herself under all circumstances. We therefore reject plaintiff's claim that defendant was obligated to warn her of all obvious possible dangers and GRANT TNT's motion for summary judgment with respect to this ground for liability.

981 F.Supp. 742, 745 (D.Conn.1996) (alterations in original).

In the instant case, the fact that TNT's brochure described the Club Fortuna Beach as a "dependable" hotel does not give rise to a duty on TNT's part to guarantee the safety of every piece of furniture in the hotel. Similarly, the description of Club Fortuna Beach as a "3 sun" hotel with "more personalized service" does not guarantee that TNT's representatives would protect Plaintiff from three-legged chairs. As was the situation in *Wilson v. American Trans Air, Inc.,* 874 F.2d 386 (7th Cir.1989), "[t]he brochure language relied upon by [the plaintiffs] . . . is mere 'puffing.' The language is not a guarantee of safety, and does not constitute affirmative conduct giving rise to a duty to investigate and warn." *Id.* at 391.

Finally, Plaintiff contends that "[b]ecause of its presence at the hotel and its relationship to its customer, TNT's role is closer to that of a landlord or innkeeper." Plaintiff's Response at 3. The court rejects Plaintiff's unsupported assertion that a tour operator has the duty of an innkeeper or land owner. *See Stafford v. Intrav, Inc.,* 841 F.Supp. 284, 287 (E.D.Mo.1993), *aff'd* 16 F.3d 1228 (8th Cir.1994). In *Stafford,* the plaintiff fell from a platform on a cruise ship while on a package tour arranged by the defendant. *See id.* at 285. The court in *Stafford* stated that:

> Intrav's role was merely that of tour operator. Plaintiff Phyllis Stafford's injury did not occur on premises under defendant's control as Intrav did not own or maintain the M.S. Olympia nor was it responsible for placement of the gangplank. Intrav was not a common carrier or an innkeeper, nor was its relationship with the plaintiffs one of business invitor/invitee.

*Id.* at 287; *see also O'Keefe v. Inca Floats, Inc.,* No. C–97–1225 VRW., 1997 WL 703784, at *4 (N.D.Cal. Oct.31, 1997) (quoting *Stafford* ); *cf. Wilson v. American*

*Trans Air, Inc.,* 874 F.2d 386, 389 (7th Cir.1989) ("We cannot accept the [plaintiff's] contention that [the tour operator] has assumed the duties of an innkeeper.... It makes little sense to allow charter tour operators to disclaim contractually vicarious liability for the negligent acts of a hotel and then to impose on the charter operator direct liability as an innkeeper.").

Plaintiff has not established by affirmative evidence that TNT owned, operated, or controlled Club Fortuna Beach. Accordingly, there can be no duty on TNT's part, and Plaintiff's negligence claim must fail. As was the situation in *Squires:*

> Even to the untrained eye this case was brought against the travel agency as a potential deep pocket located in this country. Unfortunately for the plaintiffs, there must be some showing of a breach of duty by the travel agency before there can be a successful case sounding in negligence. Mrs. Squires "slipping on a narrow, damp, sloping sidewalk at the Hotel Solymar" absents a showing of some duty that the defendant travel agency owed to the plaintiffs concerning the sidewalk. Here, there can be no negligence.

*Squires v. Atkinson & Mullen Travel, Inc.,* No. 97 CIV. 4332 KTD., 1997 WL 1068659, at *1 (S.D.N.Y. Sept.23, 1997).

### b. Even if a tour operator has a limited duty regarding a participant's safety at a hotel, absent special circumstances that duty is satisfied by a minimal investigation of the hotel.

■ Plaintiff contends that "it is a factual issue to be determined by a jury whether or not TNT exercised reasonable care in ensuring that the premises at the Club Fortuna Beach Hotel were safe for its customer, Simone Lacroix." Plaintiff's Memo at 4. However, Plaintiff has not alleged any special circumstances that

would give rise to a need for TNT to engage in additional activity beyond a minimal investigation in regard to a participant's safety at the hotel. In the absence of special circumstances indicating that additional measures are necessary, a tour operator fulfills its obligation with respect to the safety and security of a tour participant by conducting a minimal investigation of the hotel accommodations included in its tour packages. *See Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 390 (7th Cir.1989) (holding that there was "no duty to make specific inquiries into guest safety or security" at a hotel where defendant tour operator had relied on the general reputation of a hotel and the fact that it had not received any guest complaints regarding safety or security); *Passero v. DHC Hotels and Resorts, Inc.,* 981 F.Supp. 742, 744 (D.Conn.1996) (holding tour operator had no obligation to take additional measures to secure the safety of its tour participants when prior to including a hotel in its package defendant found it to be satisfactory through inspection and discussions with other tour operators, and since using the hotel had no notice of any accidents).

■ Even if TNT owed Plaintiff some limited duty to inquire into the safety and reputation of Club Fortuna Beach, TNT has fulfilled this duty. According to Ms. Haley:

> TNT first began offering tour packages including Club Fortuna Beach as a choice of hotels in the Bahamas on or about January 1, 1993. Before TNT began booking tour participants at Club Fortuna Beach Resort, TNT discussed the hotel with other tour operators and the local Tourist Board. TNT learned that the hotel enjoyed a solid reputation. In addition, before TNT began booking tour participants at Club Fortuna Beach

Resort, TNT had a TNT representative visit in October 1992. The TNT representative found that the hotel was a satisfactory property for TNT tour packages to Grand Bahamas. In addition, a TNT representative visits Club Fortuna Beach Resort ... before the start of every season to make sure the hotel is ready for guests.

Haley Aff. ¶ 5. Such activities were deemed to be sufficient in *Wilson* and *Passero*, and the court finds that TNT has fulfilled any limited duty it may have had for Plaintiff's safety. *See Ross v. Trans National Travel*, Civ. A. No. 88–1763–Z, 1990 WL 79229, at * 2 (D.Mass. June 5, 1990) ("[The plaintiff] has adduced nothing to controvert defendant's affidavit that it checked out Micato's reputation before beginning to do business with Micato and continued to do business with it for three years, including the period in question, with no reason to question its competence.").

Since adding Club Fortuna Beach to its tour packages, TNT has not received any complaints of injuries from defective furniture or that the hotel staff failed to respond appropriately to complaints of injury.[11] *See* Haley Aff. ¶ 6. Thus, TNT could not have been put on notice that anything more than a minimal investigation was needed. *See Passero v. DHC Hotels & Resorts, Inc.*, 981 F.Supp. 742, 745 (D.Conn.1996) ("[T]here is simply no indication of prior accidents around the pool, or elsewhere at the hotel. In the absence of such facts, TNT did not have an obligation to use additional measures to secure the safety of its tour participants."); *Has-*

*sett v. Cape Cod Bicycle Tours, Inc.*, Civ. A. No. 87–0016–Z, 1987 WL 17540, at *1 (D.Mass. Sept.3, 1987) ("Plaintiff has alleged no facts ... which suggest that defendant knew or should have known that the Summit Ski and Bike Shop was unreliable.").

### c. A tour operator does not have a duty to warn of dangers of which it has no knowledge or control.

▆ Plaintiff alleges that Defendants "breached their duty to Plaintiff ... by failing to warn Plaintiff of the defect in the chair." Complaint, Count I ¶ 9. However, the case law is clear that "[t]our operators do not have a duty to avoid or warn of hazards of which they have no knowledge or that are not within their control." *Patrick v. Massachusetts Port Auth.*, 141 F.Supp.2d 180, 188 (D.N.H.2001). The court has already addressed TNT's lack of control over Club Fortuna Beach. *See* discussion *supra* Section II.A.1.a. Thus, the court turns to the issue of TNT's knowledge of the allegedly defective chair.

▆ Plaintiff cites *DeRobbio v. Stop & Shop Supermarkets*, 756 A.2d 209 (R.I. 2000), for the proposition that "reasonable minds could differ whether [the employee], who was in the immediate location of the accident, knew or should have known of the dangerous condition (that is, the box on the floor) ...." *Id.* at 212 (alteration in original); *see also* Plaintiff's Memo. at 5. Plaintiff argues that "[l]ikewise, in this case, reasonable minds could differ as to whether TNT's representative should have known of the dangerous condition of the

---

11. Although Plaintiff contends that this information, as stated in the Haley Aff. affidavit is hearsay and inadmissable, *see* Plaintiff's SMF ¶¶ 8–9, Ms. Haley has asserted that she has personal knowledge of the information, *see* Haley Aff., and the court finds that the Manager of Customer Service is in a position to

have such personal knowledge. At oral argument, Plaintiff's attorney agreed that the Manager of Customer Service would have some knowledge of such issues but noted that there were still problems with Ms. Haley's citing to statistics. Accordingly, the court has not relied on any statistics reported by Ms. Haley.

chair, as its 'office' in the hotel was close by the location where Simone's accident occurred." Plaintiff's Memo. at 5. It appears that Plaintiff does not contend that any TNT employees in fact knew that the chair on which Plaintiff attempted to sit was defective.[12] She merely asserts that TNT's " 'office' in the hotel was close by the location where [her] accident occurred." Plaintiff's Memo. at 5. The mere proximity of TNT's desk and chairs is not enough to establish that TNT should have known that the chair was defective.

Moreover, the Rhode Island Supreme Court's decision in DeRobbio is inapposite. Whereas in *DeRobbio* the store employee "was in the immediate location of the accident," 756 A.2d at 212, the Rhode Island Supreme Court distinguished that case from others "in which it was clear that no employee or agent was present in the area where the accident occurred," *id.* In the instant case, when Plaintiff fell no TNT employee "was in the immediate location of the accident." *Id.* Although in her Complaint Plaintiff alleged that she met with a TNT representative on March 20, 1999, *see* Complaint ¶¶ 6, 8, in her affidavit Plaintiff states that she met with a representative named Vicki regarding time shares, *see* Plaintiff's Aff. ¶ 25, not Shelly Bethel or Patrice Handfield. As noted previously, see note 5, Vicki works for Club Fortuna Beach, *see* Haley Aff. ¶ 7, not TNT. Later that evening Plaintiff called the hotel desk to speak to the TNT representative and "was told she would not be in until 9 a.m. the next day." *Id.* ¶ 31.

Even if a TNT representative had been present at the time of Plaintiff's accident, a tour operator has no duty to warn of a dangerous condition that is equally discoverable by Plaintiff. *See Passero v. DHC*

*Hotels & Resorts, Inc.*, 981 F.Supp. 742, 744 (D.Conn.1996). Plaintiff states she "drew up a chair" to sit with the representative. *See* Complaint ¶ 8. In *Passero*, where the plaintiff was injured after tripping on a flotation mat by the hotel pool, *see* 981 F.Supp. at 743, the court held as follows:

[W]e find that although a tour operator may be obligated, under some circumstances, to warn a traveler of a dangerous condition unknown to the traveler but known to it, such circumstances did not exist here. This doctrine of law applies to situations where a tour operator is aware of a dangerous condition not readily discoverable by the plaintiff. It simply does not apply to an obvious dangerous condition equally observable by plaintiff, such as the presence of a flo[ ]tation mat by a swimming pool in broad daylight.

981 F.Supp. at 744 (citations omitted); *see also Bryant v. Cruises, Inc.*, 6 F.Supp.2d 1314, 1321 (N.D.Ala.1998) ("[P]laintiff was in a better position to avoid the danger of an open stairwell than defendant."); *Honeycutt v. Tour Carriage, Inc.*, 997 F.Supp. 694, 699 (W.D.N.C.1996) ("Because Plaintiff was in a far better situation to assess the situation she was in than GOGO Tours and Mann Travels, they had no duty to warn her of a danger she could have observed but about which they knew nothing.").

In the instant case, Plaintiff was in a better position to observe that the chair on which she was about to sit was defective than were TNT's representatives, who were not even present at the time of the accident. Thus TNT had no duty to warn her of the chair's defect, of which TNT was

12. The court notes TNT's denial that TNT or its destination representative, Shelly Bethel, had any knowledge before Plaintiff's accident that the chair was defective. *See* TNT's SUMF ¶ 11; *see also* Haley Aff. ¶ 4; Bethel Aff. ¶ 6.

unaware and which Plaintiff could have discovered.

### 2. Disclaimer

TNT additionally argues that it is not liable for Plaintiff's fall from a defective chair because it expressly disclaimed liability for any acts or omissions of hotels or other suppliers of services in its brochure. *See id.* at 2. Plaintiff contests the applicability of TNT's disclaimer:

> The disclaimer is not binding upon the Plaintiff as Simone LaCroix never agreed to be bound by it. She did not read the disclaimer until her trip was over and her signature was forged on the agreement section of the reservations form. Moreover, Simone LaCroix cannot be charged with notice of it as the travel agent is TNT's agent, not hers. In addition, the disclaimer relied upon by TNT is misleading.

Plaintiff's Memo. at 5. Because the court has determined that TNT's motion for summary judgment should be granted on common law grounds, the court need not reach the issue of the validity of TNT's disclaimer.

### B. Count II—Deceptive Trade Practice

Plaintiff alleges in Count II of her Complaint that "[i]n an attempt to induce Plaintiff to drop her claim, Defendant TNT produced a reservation form agreement which it claimed Plaintiff had signed. Furthermore . . . [t]he form relied upon by Defendant TNT Vacations was signed by an agent, employee or representative of Defendant and, therefore, Defendant has committed an unfair and deceptive trade practice in violation of the Rhode Island Deceptive Trade Practices Act."[13] Complaint, Count II ¶¶ 3–4. TNT denies that any of its employees forged Plaintiff's signature, *see* Haley Aff. ¶ 12; Haley Dec. ¶ 2, and contends that "[P]laintiff's deceptive trade practice claim is utterly without merit." TNT's Memo. at 17. TNT offers four reasons: 1) even without a Tour Participant Contract, TNT would not be liable to Plaintiff on common law grounds; 2) the Tour Participant Contract is enforceable whether or not Plaintiff signed it; 3) TNT did not attempt to force Plaintiff to drop her claim solely on the basis of the Tour Participant Contract; and 4) Plaintiff's assertion that TNT deceptively tried to induce her to drop her claim assumes that she had a valid claim in the first instance. *See id.* at 17–19. Plaintiff counters that Count II should survive because "the elements of such a claim are separate and distinct from her negligence claims." Plaintiff's Memo. at 7. The court agrees that Count II "falls with the negligence count." TNT's Memo. at 19.

■    Viewing the evidence in the light most favorable to Plaintiff, the court concludes that the alleged forgery by Defendant and alleged use by Defendant of the reservation form does not fit within the confines of the Unfair Trade Practice and Consumer Protection Act (UTPCPA). The UTPCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." R.I.G.L. § 6–13.1–2 (2001). The UTPCPA defines trade and commerce as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting

---

13.  Although Plaintiff refers to the Deceptive Trade Practices Act, *see* Complaint, Count II ¶ 4, in fact the Act is titled the Unfair Trade Practice and Consumer Protection Act (UTPCPA). *See* R.I.G.L. § 6–13.1–11 (2001).

the people of this state." R.I.G.L. § 6–13.1–1(4) (2001). Since the alleged forgery occurred after Plaintiff had purchased her vacation, after she had gone on and returned from her trip, and after Defendant had provided all required services, the alleged forgery did not occur in the "conduct of any trade or commerce." *See* Plaintiff's Aff. ¶ 8 ("I believe that my name was forged on the reservation form after TNT received the attached letter from my lawyer on or about June 10, 1999.").

Furthermore, the court does not find Plaintiff's argument that TNT used the allegedly forged document to induce Plaintiff to drop her claim persuasive. As evidenced by the letter of TNT's counsel to Plaintiff's attorney, Defendant did not rely solely on the allegedly forged document. Rather, TNT stated that "even apart from the terms of the tour operator contract, which are, of course, binding upon your client and which your client signed, **courts throughout the country have held consistently that tour operators, such as TNT, are not responsible for hotel negligence or other hotel derelictions.**" Harwood Aff., Ex. A, Letter from Gould to Stutchfield of 6/14/99 (emphasis added).

### C. *Forum Non Conveniens*

In the alternative, TNT argues that the case should be dismissed under the doctrine of *forum non conveniens. See* TNT's Motion for Summary Judgment at 1. Because the court finds that summary judgment should be granted on both Counts I and II, the court need not reach TNT's argument that Plaintiff's Complaint should be dismissed under the doctrine of *forum non conveniens.*

### D. Forum Selection Clause

TNT additionally argues that Plaintiff's Complaint should be dismissed or transferred to the District of Massachusetts based on the forum selection clause of the Tour Participant Contract. *See* TNT's Motion for Summary Judgment at 1. However, because the court finds that summary judgment should be granted as to both Counts of Plaintiff's Complaint, the court declines to address TNT's alternative argument that the action should be dismissed or transferred on the basis of the forum selection clause.

### E. Summary

The court recommends that summary judgment be granted as to Count I and Count II of Plaintiff's Complaint. "[S]peculative and conclusory allegations by the non-movant are insufficient to prevent a summary judgment motion from being granted." *Carley v. Theater Dev. Fund,* 22 F.Supp.2d 224, 227 (S.D.N.Y.1998); *see also Passero v. DHC Hotels & Resorts, Inc.,* 981 F.Supp. 742, 745 (D.Conn.1996) ("Mere speculation by the plaintiff will not suffice to defeat an otherwise proper motion for summary judgment."); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1313 (D.Kan.1987) ("The party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial."). Plaintiff has not demonstrated that there is a genuine issue of material fact, and TNT is entitled to judgment as a matter of law.

Tour operators are not liable for injuries which occur at independent hotels, and Plaintiff has not established that TNT owned or controlled Club Fortuna Beach. The court does not find that TNT's control over the vacation, pervasive presence, or brochure language gave rise to a duty on the part of TNT to ensure Plaintiff's safety. Rather, the court concludes that TNT has fulfilled any limited duty it may have had in respect to Plaintiff's safety through its initial investigation of the hotel and subsequent yearly inspections. Further-

more, TNT did not have a duty to warn Plaintiff of the allegedly defective chair as TNT did not own or control Club Fortuna Beach and the defect in the chair was equally discoverable by Plaintiff.

## Conclusion

For the reasons explained fully above, **I recommend that TNT be granted summary judgment on both counts.** Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. *See* Fed.R.Civ.P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision. *See United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).